## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO.: 15-20958-CIV- MARTINEZ-GOODMAN

| | |
|---|---|
| REALSEC, INC., a California company,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDEANTRADE, S.A., a Foreign company, ASETELSOS, Cia Ltd., a foreign company, OSCAR TRUJILLO, an individual,<br><br>    Defendant. | CIVIL DIVISION |

## MOTION TO DISMISS OR ALTERNATIVELY TO STAY THE ACTION

COME NOW, the Defendants, ANDEANTRADE, S.A., a foreign company, and OSCAR TRUJILLO, Individually, in the above captioned cause and move to dismiss the complaint in its entirety pursuant to F.R.C.P. 12(b), 19 and 9 U.S.C. § 3, and in support of which state as follows:

## FACTS

1. Arbitration is mandated as the method for resolving disputes that stem from the Contract, which forms the basis of Realsec's rights in this matter.  Exhibit 1.

2. That arbitration is already underway before the International Chamber of Commerce and was underway before this lawsuit was filed.  Exhibit 2.

3. Realsec ties itself into knots in an attempt to state a cause of action stemming from the Contract, without making itself subject to the arbitration provision.  It fails.

4. Realsec fails to establish jurisdiction, venue or any complete cause of action.

5. In fact, the whole complaint ends in midsentence like the Fitzgerald's, The Last Tycoon.

6. By way of background, the Federal Judiciary in Ecuador ("Judicial Council") sought a supplier to provide technology systems for the courts in Ecuador.  Complaint ¶ 1, 16, 17.

7. This bid was awarded to Asetelsos, Cia Ltd., who subcontracted Andeantrade, Inc., a Florida corporation who has not been named in this action ("Andeantrade Florida").  Andeantrade Florida then subcontracted with Realsec. *Id.* ¶ 10, 11, 33.

8. A portion of the Contract between Andeantrade Florida and Realsec is attached to the Complaint as Exhibit A.  However, it is not complete.  The first page Realsec bothered to provide begins with § 2.3.4.  The Contract has also not been translated.

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

9.  Oscar Trujillo ("Mr. Trujillo") signed the contract on behalf of Andeantrade Florida, as its principal.  *Id.*

10. The Contract contains an arbitration provision:

> **10.1    Resolution of Controversies**
>
> In case of disagreements derived from the instant contract or related to same, the parties undertake to submit said disagreements to the ADR disagreement resolution procedure of the International Chamber of Commerce.  In the event that the disagreement is not resolved through ADR within 45 days of the filing of the demand for ADR, or at the expiration of some other time period agreed to in writing by the parties, said disagreement shall be definitively resolved in accordance with the Arbitration regulations of the International Chamber of Commerce by an arbitrator named in accordance with said regulations. The arbitration shall be conducted in Spanish, in the city of Miami, State of Florida, United States of America.

*Id.*

11. Unbelievably, Realsec cites this provision as a basis for jurisdiction and yet ignores its requirement to arbitrate.  Complaint ¶ 3.

12. This arbitration is under way.  Realsec was served long before this Federal Action was filed.

13. Andeantrade, S.A. ("Andeantrade Ecuador") is not a party to any agreement in this case.

14. Andeantrade Ecuador conducts no business in the United States whatsoever.

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

15. Realsec alleges that it received payments from Andeantrade Florida. *Id.* ¶ 34, 40.

16. Andeantrade Ecuador does not maintain any employees in Florida and does not own any real or personal property in this state. Neither does it have any offices, bank accounts, telephone numbers or mailing addresses in Florida. Andeantrade Ecuador does not attempt to market its services in Florida. Exhibit 3.

## UNSUPPORTED CONCLUSIONS

17. Realsec made enormous logical leaps in an effort to support its Complaint.

18. While the Defense may be burdened with Realsec's false statements of facts, at this stage, we refuse to acknowledge or ignore its unsupported conclusions.

19. Specifically, Andeantrade Florida subcontracted with Realsec to provide a service to the Judicial Council. Andeantrade Florida sells this product to the Judicial Council for more money than it pays Realsec. The difference between what Andeantrade Florida is paid and what they pay Realsec is Andeantrade Florida's profit. However, Realsec concludes that Andeantrade Florida "siphoned off $1.2 million" by charging the government more than it is paying Realsec. *Id.* ¶ 11. This conclusion of "siphoning", which suggests theft rather than profit, is unsupported even by the liberally worded facts alleged by Realsec.

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

20. Further, Realsec asserts that Andeantrade Florida is the alter ego of Andeantrade Ecuador. *Id.* ¶ 9. However, Realsec provides no facts at all to describe the relationship between Andeantrade Florida and Andeantrade Ecuador, except to say that Andeantrade Florida is a subsidiary. *Id.* ¶ 33.

21. Similarly, Realsec asserts that Asetelsos is a nominee or beard of Andeantrade Ecuador. *Id.* ¶ 10. The undersigned is not familiar with the legal efficacy of alleging that one company is a beard for another. However, Realsec offers no facts to establish that Andeantrade Ecuador is in fact a beard, goatee or mustache for Asetelsos.

22. Finally, Realsec alleges that Mr. Trujillo might be a "part-time resident of Florida." *Id.* ¶ 7. Again, there is no legal significance in being a "part time resident." Such an unknown status without any supporting facts is insufficient on its face to confer jurisdiction upon this Court.

## MEMORANDUM OF LAW

### I. ARBITRATION

The case at bar must be stayed pursuant to 9 U.S.C. § 3. The Federal Arbitration Act ("FAA") mandates that a contract clause requiring the parties to "submit to arbitration an existing controversy arising out of such a contract…shall be valid, irrevocable and enforceable…" 9 U.S.C. § 2. "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious

results.'" *Preston v. Ferrer*, 552 U.S. 346, 357-58 (2008) citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 633 (1985). See also *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 278, 115 S. Ct. 834, 841, 130 L. Ed. 2d 753 (1995), *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984) "There is strong presumption in favor of enforcing arbitration clauses in the context of international commercial disputes." *Pysarenko v. Carnival Corp.*, No. 14-20010-CIV, 2014 WL 1745048, at *1 (S.D. Fla. Apr. 30, 2014) aff'd, 581 F. App'x 844 (11th Cir. 2014) citing *Lindo v. NCL (Bahamas)*, 652 F.3d 1257, 1269, 1275 (11th Cir. 2011).

Realsec's rights come from the Contract.  The Contract requires enforcement by arbitration through the International Chamber of Commerce of any dispute derived from or related to the Contract.  No matter how Realsec twists the facts to invent causes of action against parties who did not sign the Contract, the Contract mandates that Realsec's rights may be enforced only in arbitration.  Furthermore, that arbitration is already moving forward.

### a)  *Request for judicial notice of the pending arbitration.*

The Court may take judicial notice of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned…. at any stage of the proceeding" Fed. R. Evid. 201.  It is appropriate,

on a motion to dismiss, for the Court to take judicial notice of documents filed in a separate arbitration proceeding to establish the fact that the proceeding is occurring. *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002)

Andeantrade Florida has sought relief from Realsec for its failure to timely deliver pursuant to the Contract.  Realsec has been served and has participated in the action through its counsel.  Andeantrade Florida has consented to the authority of the ICC to provide a full and complete resolution to this matter. The Defense asks the Court take judicial notice of this proceeding and the documents supporting it.

### b)  This action is inefficient

It is unknown why Realsec chose to file a completely separate action in a separate forum after having been a party to an existing arbitration.  There is no conceivable reason for it, other than a desire to churn fees.  As quoted above, the courts and the legislature have a stated goal of resolving disputes in the most efficient manner possible.  Conducting multiple proceedings stemming from the same facts, predicated upon the same Contract is the antithesis of that objective. As such, this matter should be stayed, if not dismissed.

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

## II. LACK OF PERSONAL JURISDICTION

### a) *Burden*

This action must be dismissed pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction over Mr. Trujillo or Andeantrade Ecuador.  In a Motion to Dismiss for Lack of Personal Jurisdiction, the Plaintiff bears the burden of establish[ing] a prima facie case of Personal Jurisdiction over a nonresident defendant."  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (*citing Morris v. SSE, Inc.*, 843 F. 2d 489, 492 (11th Cir. 1988)).  While it is true that, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits"  (see *Id*), the burden shifts back to the Plaintiff with regard to those statements, which have been rebutted by the Defendant's allegations.  *Meier v. Sun International Hotels, Ltd.*, 288 F. 3d 1264, 1269 (11th Cir. 2002), *Berry v. Salter*, 179 F. Supp.2d 1345, 1347 (M.D.A.L 2001).  At that point, "the Plaintiff must present more than conclusory statements, unsupported by evidence, to establish personal jurisdiction."  *Id.* at 1347-1348.  "Finally, where the Plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the Plaintiff."  *Madra*, 916 F. 2d at 1514, (*citing Morris v. SSE, Inc.,* 843 F. 2d 489, 492 (11th Cir. 1988)).

It is conceded that Mr. Trujillo and Andeantrade Ecuador are non-resident

defendants.   Complaint ¶¶ 6, 7.   Therefore, the Plaintiff must meet its burden in demonstrating both of the following factors:

1. That Mr. Trujillo and Andeantrade Ecuador are subject to Florida's Long Arm Statute.   *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F. 2d 829, 855 (11th Cir. 1990); *Alexander Proudfoot Co. v. Thayer*, 877 F. 2d 912, 919 (11th Cir. 1989); and

2. That Mr. Trujillo and Andeantrade Ecuador have sufficient minimum contacts with Florida, and that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

*Madra*, 916 F. 2d at 1514, *DiMaggio, LLC. v. City, County of San Francisco*, 187 F. Supp.2d 1359 (S.D.Fla. 2000) *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 2004 WL 2925971 (S.D.Fla. 2004).

### b)  The Florida Long Arm Statute

The Florida Long Arm Statute provides that, Personal Jurisdiction is proper within the State of Florida if any of the following acts have been committed:

(a)  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

(c) Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

(d) Contracting to insure any person, property, or risk located

within this state at the time of contracting.

(e) With respect to a proceeding for alimony...[sic]

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

(h) With respect to a proceeding for paternity…[sic]

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. 48.193.  The Plaintiff makes no allegations, which would support any of the factors listed above against Mr. Trujillo.  Their allegations against Andeantrade Ecuador are conclusory in nature.  Further, they are rebutted by the affidavit of Oscar Trujillo.  For that reason, unless the Defense is able to come forward with more definite, non-conclusory allegations against Andean Trade, the Defense asks this court to dismiss the Complaint for lack of Personal Jurisdiction.

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

### c) *Minimum Contacts*

In addition to the inapplicability of the Florida Long Arm Statute, the Plaintiff failed to allege facts to demonstrate that the Defendants have sufficient minimum contacts to satisfy the due process requirements of the Fourteenth Amendment.

The exercise of Specific Jurisdiction depends upon the contacts the Defendant had with the forum state, which directly relate to the case in question. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984). "It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Furthermore, "[t]he requirement that there be minimum contacts is grounded in fairness. It assures that 'the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there.'" *Consolidated Development Corp.*, 216 F.3d at 1292, (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As stated above, Mr. Trujillo's total contacts with the State of Florida is the

allegations that he might be a "part-time" resident.  Certainly, this is insufficient to find that Mr. Trujillo reasonably anticipated being haled into court in Miami. Similarly, Andeantrade Ecuador, pursuant to their declaration, has no contacts whatsoever, with Miami.

Nor can the Plaintiff establish General Personal Jurisdiction.  For the court to exercise General Jurisdiction over a non-resident, the Plaintiff must demonstrate that the defendant had continuous and systematic contact with the state. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984)  "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Meier v. Sun International Hotels, Ltd.*, 288 F. 3d 1264, 1274 (11th Cir. 2002) (quoting *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F. 3d 1286 (11th Cir. 2000)).

Furthermore, the court found the following factors compelling in determining that the Southern District of Florida did not have General Jurisdiction over a defendant:  the defendant, "does not maintain any employees in Florida and does not own any real or personal property in this state.  Neither does it have any offices, bank accounts, telephone numbers or mailing addresses in Florida. Apart from purchasing source material from Florida residents, [the defendant] solicits no business in Florida and does not attempt to market its [product] in Florida."

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

*National Enquirer, Inc. v. News Group News, Ltd.*, 670 F.Supp. 962 (S.D.Fla. 1987).   The same is true for Andeantrade Ecuador, except that Andeantrade Ecuador does not even make purchases in Florida.   In conclusion, General Jurisdiction is inappropriate in this case and the Complaint should therefore be dismissed.

It does bear mentioning that the Court would certainly have jurisdiction over Andeantrade Florida, the company who actually signed the contract, had a relationship with Realsec and who presently is conducting an arbitration against Realsec for Realsec's failure to perform under the Contract.

## III.   FAILURE TO STATE A CLAIM

The Defense seeks dismissal under F.R.C.P. 12(b)(6) for failure to state a cause of action.   By some extraordinary effort of draftsmanship, the Plaintiff has completely failed to properly allege any cause of action.   Its two claims for breach of contract both fail for lack of privity.   Its claim for tortious interference with an advantageous business relationship fails because Realsec does not and cannot establish a direct relationship with the Judicial Council.   Finally, the Plaintiff fails to make any allegations in support of its claim of fraud.   The Complaint simply ends in the middle of a sentence after a semicolon.[1]

---

[1] The Defense is fully cognizant of the fact this represents a clerical error on the part of the Plaintiff.  If this Complaint were not so clearly a waste of legal resources, we would have reached out to opposing counsel and suggested they amend prior to the filing of this motion.

### a) Breach of Contract

To state a cause of action for breach of contract, the Plaintiff must allege privity between the Plaintiff and the Defendant. *Bd. of Trustees of Bay Med. Ctr. v. Humana Military Healthcare Servs., Inc.*, No. 5:03 CV 144/MCR, 2004 WL 3314946, at *6 (N.D. Fla. Mar. 16, 2004) citing *Merritt v. United States*, 267 U.S. 338, 340–41 (1925). In the case at bar, the Plaintiff alleges neither contractual privity with Mr. Trujillo or Andeantrade, S.A. As such, its claims for breach of contract must be dismissed.

### b) Tortious Interference

"Under Florida law, a claim for tortious interference cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. 'In other words, the interfering defendant must be a third party, a stranger to the business relationship.'" *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007) citing *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir.2001), *Accord Sobi v. Fairfield Resorts, Inc.*, 846 So.2d 1204, 1207-08 (Fla. 5th DCA 2003); *Masciarelli v. J.D. Aiken Co., Inc.*, 770 So.2d 726 (Fla. 4th DCA 2000); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999). See also *Nimbus Techs.,*

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

*Inc. v. SunnData Prods., Inc.*, 484 F.3d 1305, 1309-10 (11th Cir.2007) (applying Alabama law).

In the case at bar, Realsec's business relationship only exists by virtue of the contract it has with Andeantrade Florida. Realsec alleges that Andeantrade Florida has a contract with Asetelsos, who had a contract with the Government. Realsec further alleges that Andeantrade Florida and Andeantrade Ecuador are one in the same. It completely fails to allege any independent relationship between Realsec and the Judicial Council. Instead, Realsec alleges facts strikingly like those in *Romika-USA*, where its own relationship only exists by virtue of the Defendant. As such, Realsec cannot sustain a cause of action for tortious interference with an advantageous business relationship, because it is not Realsec's relationship. Thus, this claim must be dismissed.

### c) *Fraud*

Claims of fraud are subject to the heightened pleading requirements of F.R.C.P. 9(b). In the case at bar, the Plaintiff has failed to allege with "particularity the circumstances constituting fraud or mistake." *Id.* As such, this claim must be dismissed. Further, the elements of fraud are "(1) a false statement regarding a material fact, (2) the statement maker's knowledge that the representation is false, (3) intent that the representation induces another's reliance,

and (4) consequent injury to the party acting in reliance." *In re Herrera-Edwards*, 524 B.R. 845, 855 (Bankr. M.D. Fla. 2015), citing *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294 (11th Cir.2007), *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So.2d 631, 632 (2005).  The Plaintiff has failed to account for any of these elements.  As such, its claim must be dismissed.

## IV. FAILURE TO JOIN A PARTY UNDER RULE 19

This cause of action must be dismissed pursuant to F.R.C.P. 12(b)(7) and 19 for failure to join an indispensible party.  Pursuant to F.R.C.P. 19, a party is required to be joined if "in that person's absence, the court cannot accord complete relief among existing parties." *Id.*  Andeantrade Florida is an indispensible party to this litigation because it is a party to the Contract under which the relief is sought, and the court cannot grant complete and proper relief without it.

In *Spear,* a breach of contract claim, the plaintiff "did not directly enter into any express contractual agreement with [the named defendant in the suit]." *Spear Grp., Inc. v. Florida Power & Light Co.*, No. 13-80534-CIV, 2014 WL 272724, at *3 (S.D. Fla. Jan. 23, 2014).  In fact, the only express contract plaintiff was a party to existed between it and Guidant, a necessary party that was not joined by plaintiff. *Id.*  As such, the court in *Spear* granted the defendant's motion to dismiss for failure to join an indispensible party under Rule 19 because, "in breach of contract actions, all parties to the contract are deemed necessary ones to the litigation." *Id.*

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

at *3 (quoting *Acton Co. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 78–79 (1st Cir.1982).

As in *Spear,* Andeantrade Florida is the only other party to the Contract from which Realsec's rights stem.   Without joining Andeantrade Florida, no adjudication on the merits of these claims can be realized.   Therefore, Realsec's complaint against Andeantrade Ecuador should be dismissed for failure to join Andeantrade Florida – the only other party to the contract.

**Wherefore**, the Defense asks that the Complaint be dismissed for lack of personal jurisdiction, for failure to state any cause of action and for failure to join an indispensible party.   Additionally, the Defense asks that rather than allowing the Plaintiff to amend at this time, that the case be stayed pending the resolution of the pending arbitration and for any other relief this Court deems meet and just.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically through the Clerk of Court by using the CM/ECF system on April 8, 2015 on all counsel or parties of record.

Respectfully submitted,

**BARAKAT LAW, P.A.**
2701 PONCE DE LEON BLVD.,
SUITE 202
CORAL GABLES, FLORIDA 33134
TEL (305) 444-3114
FAX (305) 444-3115

BARAKAT

BY: S/BRIAN BARAKAT
BRIAN BARAKAT
FLORIDA BAR NUMBER 457220
brian@triallawmiami.com
service@triallawmiami.com

# EXHIBIT "1"

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

Entre REALSEC INC., inscrita en el registro del Estado de Delaware de los Estados Unidos de América bajo el NO. 4897622, en fecha 12 de noviembre de 2010 y domiciliada en 303 Twin Dolphin Drive, Suite 600, Redwood City, CA 94065, Estados Unidos de América, ("el Vendedor") debidamente representada en este acto por su apoderado SEBASTIAN MUNOZ NAJARRO, español, mayor de edad, titular del pasaporte  No. XDA579583, según lo acredita con documento "Written consent of the board of directors" y ANDEANTRADE INC. sociedad mercantil debidamente inscrita en el Estado de Florida de los Estados Unidos de América, domiciliada 10850 NW 21ST Suite # 100 Miami -- Florida, Estados Unidos de América con identificación fiscal No. 77-0676895G(el "Comprador"), debidamente representada en este acto por OSCAR TRUJILLO IZURIETA, ecuatoriano, mayor de edad, titular de la cedula de identidad No. 060213463-7 , según lo acredita con documento "Florida Department of State -- Division of Corporations", han convenido celebrar el presente Contrato de Suministro de Equipos de Tecnología, a regirse por los siguientes considerandos y cláusulas:

Considerando, que el comprador firmó un Contrato con el Consejo Nacional de la Judicatura de Ecuador, en fecha 11 de diciembre de 2013 ("Contrato Principal"), cuyo objeto es el suministro de Equipos de Tecnología, la instalación de los mismos y el entrenamiento que sea necesario para garantizar el funcionamiento de los equipos por los operadores finales.

Considerando, que el Vendedor es una empresa especializada en la procura de dichos equipos y tiene el conocimiento necesario  garantizar no sólo el suministro sino la transferencia de tecnología asociada a los mismos;

Considerando, que el Comprador ha decidido contratar con el Vendedor la compra de equipos objeto del Contrato Principal así como el las actividades de instalación, asistencia y formación y transferencia tecnológica relacionada con el adecuado funcionamiento de los equipos;

Las partes han convenido celebrar el presente Contrato de Equipos de Tecnología, a ser administrado de acuerdo a las siguientes Cláusulas:

## PRIMERA. OBJETO DEL CONTRATO.

1.1     El Vendedor suministrará al Comprador los Equipos de Tecnología (los "Equipos"), y prestará los servicios referentes a la asistencia técnica requerida para la instalación, la correcta transferencia de tecnología y la consultoría que a tal efecto sea necesaria (los "Servicios"), de acuerdo a los conceptos establecidos en la Orden de Compra que se anexa al presente Contrato como Anexo A.

1.2     El Cronograma de Entrega de los Equipos y de Prestación de Servicios, se anexa al presente Contrato como Anexo B.

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

**SEGUNDA. PRECIO DE EQUIPOS Y SERVICIOS.**

2.1    Los precios establecidos son aquellos estipulados en el Anexo A, sin que en ellos pueda existir variación alguna que sea reconocida dentro del marco de este Contrato. Los Equipos en la Orden de Compra son los detallados en los ítem 2.2.1 de la misma (los "Equipos"), mientras que los Servicios son los estipulados en el ítem 2.1.2. renglones siguientes (los "Servicios").

2.2    El Monto de los Equipos y Servicios a ser proveídos por el Vendedor es por la cantidad de **DOS MILLONES CIENTO QUINCE MIL CIENTO TRECE DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON CUARENTA CÉNTIMOS (USD 2.115.113,40)** (el "Precio"), dividido de la siguiente manera:

2.1.1    Una cantidad de **UN MILLON QUINIENTOS CUARENTA Y SEIS MIL CUATROCIENTOS SESENTA Y TRES DÓLARES DE LOS ESTADOS UNIDOS AMÉRICA CON CUARENTA CÉNTIMOS (USD 1.546.463,40)** por concepto de los Equipos y mantenimientos por cinco años;

2.1.2 Una cantidad de **QUINIENTOS SESENTA Y OCHO MIL SEISCIENTOS CINCUENTA DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA (USD 568.650)** por concepto de los Servicios.

2.3    El pago del Precio será realizado de acuerdo a los siguientes parámetros:

2.3.1    Una cantidad equivalente al Cincuenta por ciento **(50%)** del valor total, contra firma del siguiente documento, es decir, **UN MILLON CINCUENTA Y SIETE MIL QUINIENTOS CINCUENTA Y SEIS DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON SETENTA CÉNTIMOS (USD 1.057.556,70)**

2.3.2 Una cantidad equivalente al VEINTE Y CINCO por ciento **(25%)** del valor total, correspondiente a los hitos 1 y 2 del proyecto, tras la finalización de los mismos, es decir, **QUINIENTOS VEINTE Y OCHO MIL SETECIENTOS SETENTA Y OCHO DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON TREINTA Y CINCO CÉNTIMOS (USD 528.778,35)**.

2.3.3    Una cantidad equivalente al VEINTE por ciento **(20%)** del valor total, correspondiente a los hitos 3 y 4 de implantación del proyecto, tras la finalización de los mismos, es decir, **CUATROCIENTOS VEINTE Y TRES MIL VEINTE Y DOS DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON SESENTA Y OCHO CÉNTIMOS (USD 423.022,68)**.

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

2.3.4   Una cantidad equivalente al CINCO por ciento (5%) del valor total contra acta de aceptación definitiva la cual debe incluir la obtención de la certificación de acreditación nacional como Autoridad Certificadora por parte del cliente final, es decir CIENTO CINCO MIL SETECIENTOS CINCUENTA Y CINCO DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON SESENTA Y SIETE CÉNTIMOS (USD 105.755,67).

2.4     Los distintos pagos mencionados deberán ser realizados mediante transferencia bancaria, una vez que se hayan efectivizado las transferencias realizadas por el Consejo Nacional de la Judicatura, esto es al menos 72 horas posteriores a la fecha de acreditación. Los gastos bancarios relacionados con las transferencias en el país del Comprador, serán a su cuenta y los que surjan fuera del territorio del Comprador, serán asumidos por el Vendedor.

### TERCERA. PLAZOS Y CONDICIONES.

3.1     Los Equipos serán entregados en condiciones CIF Miami de acuerdo con los INCOTERMS 2000.

3.2     Se tomará como Fecha de Suministro la fecha de Conocimiento de Embarque (Bill of Lading) y/o de la Guía Aérea (Airway Bill).

3.3.    El Vendedor suministrará al Comprador dos (02) originales y una (01) copia del Conocimiento de Embarque (Master Bill of Lading), con al menos tres (03) días de anticipación a la llegada del buque a puerto Americano. De ser el caso, la Guía Aérea (Airway Bill) las copias serán entregadas con dos (02) días de anticipación a la fecha estimada de llegada de los Equipos.

3.4     Adicionalmente, el Vendedor deberá proporcionar con al menos cinco (05) días de anticipación a la llegada de los Equipos, los siguientes documentos: (i) Certificado de Origen; (ii) Certificado de Calidad; y (iii) tres (03) originales y una (01) copia de la Factura Comercial.

3.5     Los Equipos no podrán ser enviados bajo ninguna circunstancia como mercancía consolidada.

3.6     Los Equipos serán revisados por el Comprador mediante la lista de empaque (Packing List) y el Conocimiento de Embarque y/o de la Guía Aérea.

### CUARTA. PENALIDADES.

4.1     En caso de incumplimiento de las fechas pactadas para la materialización del pago, por causas imputables al Comprador, El Vendedor incrementará el Cero punto Un Por Ciento (0.1%) del pago demorado por cada día. El monto total de dicha penalidad no excederá del Siete Por Ciento (7%) del valor del pago demorado. Esta penalidad entra en efecto el día hábil

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

inmediatamente siguiente a la culminación del lapso establecido para cada caso concreto. No se aplicarán multas cuando existan retrasos en los pagos realizados por parte del Consejo de la Judicatura.

4.2 En Caso de incumplimiento por causas imputables al Vendedor, se deducirán de los pagos los montos relativos a la aplicación de las sanciones estipuladas en la cláusula anterior. Si el incumplimiento del Vendedor está representado en retrasos superiores a un (01) mes calendario de las fechas pautadas en el Cronograma marcado como Anexo B, El Comprador podrá rescindir el presente Contrato mediante comunicación por escrito.

### QUINTA. GARANTÍAS TÉCNICAS.

5.1 El Vendedor garantiza al Comprador que los Equipos a suministrarse serán nuevos, provenientes de la producción corriente. Como garantía se exige la entrega del Certificado de Origen de acuerdo a lo establecido en la Cláusula 3.4.

5.2 El plazo de garantía de los Equipos será de un (01) año contado a partir del acta de aceptación definitiva la cual deben incluir la obtención de la certificación de acreditación nacional como Autoridad Certificadora por parte de CNJ, de acuerdo a los términos de la Ley de Contrataciones Públicas, su reglamento y las disposiciones del Contrato Principal.

5.3 Los reclamos concernientes a las Garantías Técnicas deberán presentarse por escrito y ser dirigidos al representante del Vendedor.

5.4 El Vendedor dará respuesta a cualquier reclamo presentado en un lapso que no exceda los dos días (2) siguientes a la recepción del mismo, de acuerdo al ítem de Soporte Técnico Especificados en los Pliegos de la CNJ. En dicha respuesta, el Vendedor deberá indicar la forma en la que dará solución al defecto o problema reclamado.

El tiempo máximo para resolver cualquier desperfecto por la garantía por parte del Vendedor será de 7 días hábiles a partir de la fecha de recepción de reclamo presentado por el Comprador. En caso que la respuesta ofrecida por el Vendedor se concrete en la sustitución del Equipo, la condición de entrega será la misma estipulada en la cláusula 3.1, corriendo el Vendedor con todos los gastos asociados a la sustitución el Equipo que presente problemas.

5.5 Si más del Veinte Por Ciento (20%) de los Equipos suministrados presentan el mismo defecto, este será considerado un defecto masivo, por lo que obliga al Vendedor a reponer la totalidad de los Equipos o a devolver el importe de los mismos, en un lapso no mayor a treinta (30) días calendario continuos siguientes a la recepción del reclamo que reporte el defecto masivo. En el

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

caso de la reposición total, serán por cuenta del Vendedor los gastos relacionados al envío e instalación de los nuevos Equipos.

### SEXTA. CALIDAD.

6.1     Los Equipos objeto de este Contrato deben ser entregadas por el Vendedor conforme a las normas y/o especificaciones técnicas, características de Calidad, modelo o muestras y particularidades que se describen en los Anexos del presente Contrato, respondiendo de los defectos por la construcción, materiales y manufactura empleados en la fabricación de la mismas, así como de su correcto funcionamiento. El alcance de esta responsabilidad incluye las alteraciones de calidad detectadas después de la fecha de la Firma del Acta de Aceptación Definitiva, y que provengan de algún vicio oculto relacionado con errores en el diseño, fabricación y/o instalación de los Equipos. En este caso, el Vendedor se obliga igualmente a indemnizar al Comprador por las pérdidas y daños y perjuicios causados.

6.2     Los reclamos por Concepto de calidad, deberán ser dirigidos al representante del Vendedor, adjuntando todas las evidencias que los sustenten.

### SÉPTIMA. ENVASES Y EMBAJALES.

7.1     Los Equipos objeto de este Contrato deben envasarse y embalarse en correspondencia con las normas internacionales previstas para este tipo de mercancías y de conformidad con las exigencias de la transportación marítima, aérea o terrestre, con la protección necesaria tanto exterior como interiormente, de forma tal que garantice su integridad y conservación durante su manipulación y traslado hasta los almacenes del Vendedor.

7.2     De no tomar todas las precauciones necesarias para garantizar la integridad de los Equipos durante el transporte de los mismos, el Vendedor será responsable de los daños que se le determinen al contenedor en destino y responderá económicamente por este concepto, en un lapso no mayor de treinta (30) días calendario siguientes a la fecha en la que el daño haya sido determinado.

### OCTAVA. MARCAS.

8.1     Las señales distintivas de cada Equipo serán escritas, en la parte exterior, en idioma español, con tinta indeleble, en la parte izquierda superior y en el lado delantero.

8.2     La marcación externa de los bultos debe contener la siguiente información:

*Consignatario:*              Xxxxxxxxxxxxx




## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

*Dirección*

*Completa*

### NOVENA. CASO FORTUITO Y FUERZA MAYOR

9.1     Las Partes no serán responsables por el incumplimiento de las obligaciones derivadas del presente Contrato, cuando las causas que se le imputen se deban a razones que escapen de su control y sin su culpa o negligencia, tales como; guerra (declarada o no declarada), operaciones de guerrilla, insurrecciones o tumultos, inundaciones, terremotos, explosiones, accidentes graves, epidemias, o restricciones por cuarentena o cualquier acto de los Gobiernos, que establezcan prioridades, órdenes de racionamiento o distribución especial que afecten los bienes y/o servicios objeto de este Contrato, huelgas o perturbaciones laborales que causen el cese, retardo o interrupción del trabajo, demora en el transporte u otros atrasos justificables debido a casos fortuitos, fuerza mayor o causa extraña no imputable, debidamente comprobadas. En todo caso, la parte afectada participará a la otra parte cualquier demora mediante justificación dada por escrito dentro de los dos (02) días hábiles siguientes al momento en que se tenga conocimiento del hecho que causó el o los atrasos, indicando la fecha más próxima en que podrán ejecutarse las obligaciones contempladas en el presente Contrato. Dentro de los 8 (08) días hábiles siguientes contados a partir del inicio del hecho que causó la interrupción del Contrato, se le entregará a la otra parte los documentos oficiales emitidos por la autoridad competente. Si el caso fortuito o fuerza mayor dura más de Ciento Veinte (120) días continuos, o las partes no crean las condiciones para continuar con la ejecución del Contrato, se procederá entonces a discutir su resolución.

### DÉCIMA. DE LA CONFIDENCIALIDAD

Esta cláusula contempla la protección y preservación de la Información Confidencial de las Partes.

1) LAS PARTES deberán mantener toda la Información en forma confiable y confidencial y responderán civil y penalmente por la divulgación realizada por sus empleados, agentes, socios, y cualquier persona que hubiere obtenido esta información de forma directa o indirecta proveniente de la CNJ, salvo autorización escrita y expresa de LAS PARTES. LAS PARTES no divulgarán ninguna Información a terceras personas.

2) LAS PARTES pueden entregar información confidencial a los empleados, consultores o asesores de REALSEC o ANDEANTRADE INC. en la medida que sea necesario y, asumirá la responsabilidad por el mal uso que el personal a su cargo pudiera dar a dicha información. El acceso a tal Información será entregada por una legítima necesidad y será responsabilidad absoluta de REALSEC o ANDEANTRADE INC. y por tanto, responderá por el mal uso que realice con ella.

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

3) REALSEC y ANDEANTRADE se abstendrán de utilizar la Información para fines o en formas que implique una violación a cualquier ley o regulación.

4) La Información Confidencial de LAS PARTES no será reproducida ni duplicada de ninguna manera, salvo que sea para el legítimo uso interno de REALSEC o ANDEANTRADE INC. en relación con la prestación del servicio.

5) Por ningún motivo, ninguna de las dos empresas podrá hacer ofertas laborales ni económicas al personal en nómina perteneciente tanto a REALSEC como a ANDEANTRADE INC. sea de manera directa o indirecta, con la salvedad que por algún factor de estratégica o que conviene a las dos empresas sea autorizada de manera escrita por sus representantes autorizados

6) Toda Información que LAS PARTES entreguen deberá ser devuelta luego de que su necesidad haya cesado, o contra solicitud de LAS PARTES y, en cualquier caso, a la terminación de este Contrato sin perjuicio de ninguna otra disposición en el presente Contrato, la divulgación de Información de LAS PARTES no serán impedida en los siguientes casos:

   (a) Si se respondiera a un tribunal válido u otra entidad gubernamental competente para solicitarla en el Ecuador;.
   (b) Si fuese requerida de alguna otra forma por la ley, a pesar que Las Partes hayan comunicado tal hecho previamente y hayan hecho esfuerzos razonables para obtener una orden de protección que disponga que la divulgada Información de Las partes sea utilizada únicamente para los fines para los cuales se emitió tal orden o requerimiento legal.

## DECIMA PRIMERA. RESOLUCIÓN DE CONTROVERSIAS.

10.1    En caso de desavenencias derivadas del presente contrato o relacionadas con él, las partes se comprometen a someterlas al proceso de solución de desavenencias del Reglamento ADR de la Cámara de Comercio Internacional. A falta de resolución de las desavenencias según dicho Reglamento dentro de los 45 días siguientes a la presentación de la demanda de ADR, o al vencimiento de otro plazo que hubiera sido acordado por escrito por las partes, dichas desavenencias serán definitivamente resueltas de acuerdo con el Reglamento de Arbitraje de la Cámara de Comercio Internacional por un árbitro nombrado conforme a dicho Reglamento de Arbitraje. El arbitraje será en idioma español, en la Ciudad de Miami, Estado de Florida, Estados Unidos de América.

10.2    Al momento de iniciarse cualquier de los procedimientos establecidos en la cláusula anterior, así como para envío de cualquier otra notificación relativa al presente Contrato, las notificaciones deberán ser enviadas a las siguientes direcciones:

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

Si al Comprador:    A/A Oscar Trujillo

10850 NW 21ST Suite #100

Miami, FL, 33172, USA

Tel. + 1 305-3966843

Email: otrujillo@andean-trade.com

Si al Vendedor:    A/A Sebastián Muñoz

303 Twin Dolphin Dr. Suite 600

Redwood City, CA 94065, USA

Tel. +1 650 632 4240

Email: smunoz@realsec.com

### DÉCIMA SEGUNDA. TERMINACIÓN DEL CONTRATO.

10.1    El presente Contrato podrá terminarse por las siguientes causas:

10.1.1  Por el cumplimiento de todas y cada una de las obligaciones aquí estipuladas, sin que tengas las Partes nada que reclamarse;

10.1.2  Por mutuo acuerdo, en aquellos casos en los que por caso fortuito o fuerza mayor no se posible la ejecución de las obligaciones aquí estipuladas;

10.1.3  Por incumplimiento de alguna de las partes, en cuyo cáso, además de las sanciones previstas en la cláusula 4.1, la parte que incumpla alguna de sus obligaciones y no subsane dicho incumplimiento en un lapso de treinta (30) días calendario continuos a la fecha de la recepción de la notificación que a tal efecto emita la otra parte, deberá pagar una penalidad de equivalente al Veinte Por Ciento (20%) del monto total de este Contrato, sin perjuicio de las distintas acciones civiles o penales que puedan derivarse se dicho incumplimiento.

### DECIMA TERCERA. RESPONSABILIDADES.

6.1    AndeanTrade proporcionara una copia de su contrato interno con Aseltesos y asume por la presente clausula, todas las responsabilidades derivadas de dicho contrato. Cualquier incumplimiento por parte de Aseltesos, deberá ser asumido por Andean, y estarán sujetas a las penalidades descritas en la cláusula CUARTA del presente contrato.

6.2    Andean Trade deberá asumir las tareas descritas en el Anexo C del presente contrato. El alcance del proyecto será el descrito en las bases publicadas en la adjudicación a Aseltesos y bajo el cronograma descrito en el Anexo B del presente contrato.

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

6.3     Andean Trade deberá asumir igualmente el soporte de primer nivel durante el primer año, y soporte de primero y segundo nivel durante los cuatro años siguientes a la finalización del proyecto, según documento descrito en Anexo D. Andean Trade deberá proporcionar el entorno adecuado para proporcionar soporte 24x7 en aquellas unidades de producción, donde el cliente así lo ha contratado.

6.4     Realsec asume los compromisos de actualizaciones descritos en **Anexo E** hacia Andean Trade, quien a su vez deberá trasladar dichas actualizaciones al cliente final a través de Aselteros.

6.5     Realsec asume los compromisos de capacitación descritos en el alcance del proyecto y en el **Anexo F**. Andean Trade se compromete a incluir dentro de este proceso de capacitación los recursos necesarios para poder ofrecer soporte de primer y segundo nivel. Realsec se reserva el derecho de invitar a dicha capacitación a ingenieros adicionales.

6.6     Andean Trade asume los gastos necesarios para terminar la capacitación que se efectuara en España, para las 6 personas de CNJ, incluyendo gastos de transporte, hotel y dietas.

6.7     Andean Trade deberá asumir las jornadas de acompañamiento local especificadas en los pliegos publicados. Así mismo, cuando el cliente reporte algún tipo de problema o incidencia que requiera presencia física, esta deberá ser asumida igualmente por personal de Andean Trade.

## DISPOSICIONES FINALES.

11.1     Este Contrato entrará en vigencia con la firma del mismo y permanecerá vigente hasta el total cumplimiento de las obligaciones aquí contraídas por las Partes.

11.2     Todos los cambios o modificaciones referentes al presente Contrato, deberán constar por escrito y estar suscritas por ambas partes;

11.3     Los derechos y obligaciones de las Partes no podrán ser transferidos a terceros sin el previo consentimiento otorgado por escrito de la otra parte. En caso de no obtener el consentimiento, la transferencia será nula, y la parte original continuará siendo responsable por la ejecución de las obligaciones y por los daños y perjuicios que pueda generar la no ejecución de las mismas.

11.4     Las partes acuerdan y convienen que los datos e información relacionados con el presente Contrato son de carácter confidencial, por lo que se comprometen a no hacer públicos los términos

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

y demás condiciones establecidas en el mismo, a menos que una parte autorice a la otra, por escrito, a divulgar algún particular de los contenidos del presente contrato.

Se firman dos (02) ejemplares de un mismo tenor y a un solo efecto.

En Quito, a los 11 de diciembre de 2013.

Por El Vendedor                                    Por el Vendedor

_____                    _____
SEBASTIÁN MUÑOZ                               OSCAR TRUJILLO


ANEXOS

ANEXO A. Orden de Compra de los Equipos y Servicios

ANEXO B. Cronograma de Envío de los Bienes y Ejecución de Servicios. (VER ADJUNTO)

ANEXO C. Descripción de las tareas que corresponden a Andean (VER ADJUNTO)

ANEXO E. Descripción de servicios de actualización (VER ADJUNTO)

ANEXO F. Descripción de servicios de capacitación (VER ADJUNTO)

CRONOGRAMA ACTUALIZADO.mpp

| ID | | Task Mode | Task Name | Duration | Start |
|----|---|-----------|-----------|----------|-------|
| 1 | | | PROYECTO FIRMAS DIGITALES CONSEJO DE LA JUDICATURA | 232 days | Mon 02/12/13 |
| 2 | | | Firma del Contrato del Proceso | 5 days | Mon 02/12/13 |
| 3 | | | Consultoría | 93 days | Mon 02/12/13 |
| 4 | | | Estudio de Documentación Relevante | 15 days | Mon 09/12/13 |
| 5 | | | Análisis de Requisitos Técnicos | 43 days | Mon 02/12/13 |
| 6 | | | Identificación de Requisitos | 12 days | Mon 02/12/13 |
| 7 | | | Elaboración de la documentación | 16 days | Wed 18/12/13 |
| 8 | | | Validación de documentación | 15 days | Thu 09/01/14 |
| 9 | | | Definición de la ceremonia de generació | 47 days | Thu 30/01/14 |
| 10 | | | Preparación | 15 days | Thu 30/01/14 |
| 11 | | | Elaboración de la documentación | 17 days | Thu 20/02/14 |
| 12 | | | Validación de la documentación | 15 days | Mon 17/03/14 |
| 13 | | | Definición de la DPC | 35 days | Thu 20/02/14 |
| 14 | | | Evaluación | 3 days | Mon 07/04/14 |
| 15 | | | Elaboración de la documentación | 10 days | Thu 20/02/14 |
| 16 | | | Validación de la documentación | 7 days | Mon 17/03/14 |
| 17 | | | Implementación | 68 days | Thu 10/04/14 |
| 18 | | | Desarrollo | 48 days | Thu 10/04/14 |
| 19 | | | Elaboración de manuales de explotación | 20 days | Tue 17/06/14 |
| 20 | | | Implantación | 32 days | Tue 15/07/14 |
| 21 | | | Entorno de Test | 14 days | Tue 15/07/14 |
| 22 | | | Implantación CA Raíz | 6 days | Tue 15/07/14 |
| 23 | | | Implantación Resto de Componentes | 4 days | Wed 23/07/14 |
| 24 | | | Pruebas | 4 days | Tue 29/07/14 |
| 25 | | | Entorno de Produccion | 14 days | Mon 04/08/14 |
| 26 | | | Implantación CA Raíz | 6 days | Mon 04/08/14 |
| 27 | | | Implantación Resto de Componentes | 4 days | Tue 12/08/14 |
| 28 | | | Pruebas | 4 days | Mon 18/08/14 |
| 29 | | | Entorno de Contingencia | 4 days | Fri 22/08/14 |
| 30 | | | Implantación | 2 days | Fri 22/08/14 |
| 31 | | | Pruebas | 2 days | Tue 26/08/14 |
| 32 | | | Capacitación | 14 days | Thu 28/08/14 |
| 33 | | | Responsables Técnicos | 14 days | Thu 28/08/14 |
| 34 | | | Preparación para la certificación | 25 days | Wed 17/09/14 |

CRONOGRAMA ACTUALIZADO.mpp

| Finish | Predecessors | Resource Names | Cost |
|---|---|---|---|
| Tue 21/10/14 | | | $ 3.356.170,88 |
| Fri 06/12/13 | | | $ 171,00 |
| Wed 09/04/14 | | | $ 1.650.000,00 |
| Fri 27/12/13 | 2 | | $ 350.000,00 |
| Wed 29/01/14 | | | $ 350.000,00 |
| Tue 17/12/13 | | | $ 50.000,00 |
| Wed 08/01/14 | 6 | | $ 150.000,00 |
| Wed 29/01/14 | 7 | | $ 150.000,00 |
| Fri 04/04/14 | | | $ 550.000,00 |
| Wed 19/02/14 | 5 | | $ 350.000,00 |
| Fri 14/03/14 | 10 | | $ 150.000,00 |
| Fri 04/04/14 | 11 | | $ 50.000,00 |
| Wed 09/04/14 | | | $ 400.000,00 |
| Wed 09/04/14 | 9 | | $ 200.000,00 |
| Wed 05/03/14 | 10 | | $ 50.000,00 |
| Tue 25/03/14 | 11 | | $ 150.000,00 |
| Mon 14/07/14 | | | $ 200.000,00 |
| Mon 16/06/14 | 3 | | $ 100.000,00 |
| Mon 14/07/14 | 18 | | $ 100.000,00 |
| Wed 27/08/14 | | | $ 1.106.000,00 |
| Fri 01/08/14 | | | $ 350.000,00 |
| Tue 22/07/14 | 17 | | $ 150.000,00 |
| Mon 28/07/14 | 22 | | $ 150.000,00 |
| Fri 01/08/14 | 23 | | $ 50.000,00 |
| Thu 21/08/14 | | | $ 456.000,00 |
| Mon 11/08/14 | 21 | | $ 200.000,00 |
| Fri 15/08/14 | 26 | | $ 200.000,00 |
| Thu 21/08/14 | 27 | | $ 56.000,00 |
| Wed 27/08/14 | | | $ 300.000,00 |
| Mon 25/08/14 | 25 | | $ 150.000,00 |
| Wed 27/08/14 | 30 | | $ 150.000,00 |
| Tue 16/09/14 | | | $ 200.000,00 |
| Tue 16/09/14 | 20 | | $ 200.000,00 |
| Tue 21/10/14 | 32 | | $ 200.000,00 |

# ANEXO C

## PLAN DE PROYECTO

**Actividades**

1.1. Partner (dirección de proyecto). El partner asume la contratación del PMP, según las características descritas en el pliego de CNJ y asumirá los requisitos de presencia física exigida en los mismos. Se espera del PMP que elabore las correspondientes actas de seguimiento de cada una de las reuniones de avance y entrega del proyecto y vigile el buen cumplimiento por ambas partes de los compromisos asumidos. El PMP actuara de interlocutor entre los ingenieros del cliente y los de Realsec y se deberá encargar de recopilar toda la información y documentación necesaria que sea solicitada por Realsec para el desarrollo correcto del proyecto.

1.2. Ambos (Estudio de documentación relevante) Participación requerida por parte de Andean Trade en este apartado, según los requerimientos a desarrollar por parte de Realsec.

1.3. Realsec (Análisis de requisitos Técnicos)

1.4. Ambos (Definición Ceremonia de Claves de la CA). Andean Trade deberá proporcionar la logística necesaria, en caso de que el cliente quiera hacerlo público o invitar a la prensa.

1.5 Ambos (DPCs y PCs). Realsec puede reclamar ayuda a Andean Trade a la hora de elaborar determinada documentación relativa a las políticas de certificados.

1.6 Realsec (Instalación)

1.7 Realsec (Implantación)

1.8 Realsec (Capacitación)

Esquema de formación Cryptosec OpenKey.

Nº aisec 7

# ANEXO D

## SERVICIO DE MANTENIMIENTO Y
## SOPORTE 24x7

## COBERTURA Y NIVELES Y COMPROMISOS
## (SLA,s)

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

P aises 7

## 1.- SERVICIO DE MANTENIMIENTO Y SOPORTE 24X7

El contrato de Mantenimiento 24x7 le da derecho al cliente a los siguientes servicios:

### 1.1- Actualización de versiones

Suministro de las nuevas versiones software de los productos, en el caso de las aplicaciones, y de las nuevas versiones del firmware del HSM incorporado en el appliance servidor.

### 1.2- Atención y Soporte Técnico

Incluye la atención y asistencia técnica para la correcta explotación del producto, así como el soporte técnico para la resolución de incidencias y problemas técnicos derivados del producto.

La asistencia y soporte técnico se prestará: telefónicamente, a través de correo electrónico o de forma presencial, en casos de extrema gravedad de la incidencia, con una cobertura horaria de lunes a viernes, en horario de oficina.

### 1.3- Servicios de RMA o sustitución de equipamiento hardware.

Mientras el cliente se mantenga con un contrato de mantenimiento vigente y al día en pagos, se incluye la sustitución del HSM dentro de dicha garantía de mantenimiento, en caso de que sea necesario, según los criterios establecidos por Realsec, después de haber hecho las pruebas oportunas.

En relación al hardware de los appliances, estos están garantizados durante 3 años a partir de la compra de los equipos.

### 1.4- Niveles y Compromisos del Servicio de Mantenimiento

La prestación del Servicio de Mantenimiento y Soporte de REALSEC se estructura en los siguientes tres niveles de atención y compromisos de nivel de servicio. Los niveles de Soporte 1 y 2 deberán ser asumidos directamente por el Partner.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

### Nivel de Soporte 1:

Incluye atención y asistencia técnica telefónica o por email para:

- Proporcionar información post-venta de los productos.

- Soporte para la configuración de software y hardware; preguntas sobre actualización de versiones; recopilación de información técnica para la identificación de problemas.

- Determinar la base de un problema.

- Proporcionar soporte básico sobre los productos estándar, protocolos y características.

- Documentación sobre manuales, guías, asesoramiento técnico y orientación sobre configuración, procedimientos y funciones de los productos.

- Dependiendo del caso y su complejidad, acceso remoto a los equipos del CLIENTE (previa autorización) para la subsanación de problemas.

### Nivel de Soporte 2:

Incluye la atención y asistencia técnica telefónica o por email para:

- Proporcionar soporte para resolver errores de configuración, solución de problemas, simular configuraciones complejas, resolver problemas de hardware y software, pruebas de compatibilidad antes de hacer el despliegue dentro de la red de producción; protocolos y características, diagnostico de problemas de forma remota; reproducción de problemas; configuración del producto (HSM) con un esquema de pruebas definido por el cliente.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

**Documento confidencial**

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

8ª clase 7

- Soporte para la adaptación de un HSM a la red del cliente.

- Actualización de un producto ( firmware y software)

- Aplicación de parches.

- Soporte para el manejo y trabajo de Claves con el HSM.

- Orientación y soporte sobre configuraciones, procesos y funciones de las herramientas con las que trabajan los productos.

- Asistencia técnica "in situ", siempre y cuando se considere que con ésta se va a poder solucionar el problema.

En el caso de que el técnico local del PARTNER local no supiera como o no pudiera resolver la incidencia, éste elevará la incidencia al Nivel 3 de Soporte, a través de la Web de Soporte Técnico Central de REALSEC en ESPAÑA ( http web.realsec.com ), o bien contactando al teléfono de Soporte Central de REALSEC España, para ser atendido, en la franja horaria de cobertura del tipo de Mantenimiento contratado( 8x5).

<u>Nivel 3 de Soporte:</u>

Incluye la atención y asistencia técnica telefónica o por email para:

- Que el servicio de Soporte Central de REALSEC se ocupe de resolver la incidencia, bien facilitando las correspondientes instrucciones al cliente, o, en su caso, al ingeniero local del PARTNER, en cuanto a las acciones técnicas a realizar para su resolución.

- En el caso de que el servicio de soporte Central de REALSEC ESPAÑA no consiga resolver la incidencia, la reportará al área de Desarrollo e I+D de REALSEC para que esta se ocupe de su resolución.

- Una vez identificado el origen de la incidencia y su solución, el equipo de soporte de REALSEC ESPAÑA trasladará la solución al ingeniero del PARTNER o bien directamente al cliente para su aplicación.

- Una vez aplicada la solución en el entorno del cliente y que éste confirme por email la resolución de la incidencia, ésta se dará por resuelta y cerrada.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Esquema de formación Cryptosec OpenKey.

ᴾ ᵃⁿᵉˣᵒ 7

### 1.5.- Horarios de atención y medios de contacto para recibir mantenimiento

Para recibir el servicio de Mantenimiento y Soporte 24x7, el cliente, deberá de contactar con los siguientes teléfonos y direcciones:

**PARTNER**

- Teléfono de Soporte, en horario de oficina :

- Correo electrónico :

- Página web de atención de soporte:

**REALSEC ESPAÑA**

- Teléfono de Soporte, en horario de oficina : +34 91 449 03 30

- Correo electrónico : techsupport@realsec.com

- Página web de atención de soporte : https://hq.realsec.com

Para recibir atención técnica el cliente deberá de facilitar a REALSEC los siguientes datos:

- Nombre del producto

- Número de serie del appliance servidor.

- Número de serie del HSM .

- Versión del firmware y software.

### 2 .- Niveles de servicio y tiempos de respuesta en atención 24x7

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

P clase 7

| NIVEL DE GRAV __ | DESCRIPCI ÓN | TIEMPO MEDIO | TIEMPO MEDIO |
|---|---|---|---|
| 1 | Un error aislado de software o hardware que deja al producto inoperable o causa una falla catastrófica en el producto, un impacto mayor y grave en el sistema, por ejemplo, caída del sistema.<br><br>Un defecto reportado en el producto que ha sido licenciado, que no puede ser resuelto razonablemente, en la cual hay una condición de emergencia que restringe significativamente el uso del producto, para realizar funciones necesarias para el negocio. La incapacidad de usar el producto o un | 6 (seis) horas | REALSE C se compromet e a contestar la incidencia del cliente en un plazo no superior a |
| 2 | Un error aislado de software o hardware que substancialmente degrada el rendimiento de producto o que restrinja materialmente al negocio, por ejemplo un impacto moderado en el sistema o sistema suspendido. Esta clasificación es un defecto reportado bajo el producto licenciado, el cual restringe el uso de una o más características del producto licenciado para realizar funciones necesarias para el negocio, pero no restringe completamente el uso del producto licenciado. Capacidad para usar el producto licenciado, pero una función no está disponible y las operaciones | 6 (seis) horas | REALSE C se compromet e a contestar la incidencia del cliente en un |
| 3 | Un error aislado de software o hardware que causa solo un impacto menor en el uso del producto y/o un impacto menor en el sistema; los resultados: impacto operativo. La gravedad del defecto en el nivel 3 es un defecto reportado en el producto licenciado que restringe una o más características del producto para realizar funciones básicas necesarias para el negocio.<br><br>El defecto puede ser fácilmente resuelto. El defecto puede causar algunas restricciones funcionales, pero esto no tiene un impacto crítico o severo en las | 6 (seis) horas | REALSE C se compromet e a contestar la incidencia del cliente en un |

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial



La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

*# aisec* 7

### 3. Matriz De Escalamiento

1. CLIENTE
2. PARTNER
3. REALSEC

### 4. Contactos de Matriz de Escalamiento:

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

| ARE CENTRO DE SOPORT | TELÉFONO | CORREO |
|---|---|---|
| | | — — — |
| Soporte Técnico REALSEC España | +34 670 612 844 | techsupport@realsec.com https://hq.realsec.com |

REALSEC prestará, con carácter general, la asistencia técnica al CLIENTE, de forma remota, de acuerdo con lo descrito en los puntos anteriores, hasta conseguir la correcta explotación del producto, así como el soporte técnico preciso para la resolución de las incidencias relacionadas con el mismo.

Cuando para la resolución de una incidencia relacionada directamente con el producto, se requiera la intervención física y presencial, REALSEC desplazará a las instalaciones del CLIENTE un ingeniero técnico experto en el producto, solamente cuando esta tarea sea imposible de ser asumida por el partner, según sea determinado de forma consensuada entre Realsec y el Partner.

Dicha presencia, en función de la tipología del incidente y la localización del CLIENTE, se producirá a la mayor brevedad posible, teniendo en cuenta que los técnicos deberán ser desplazados desde España, México o USA,     a partir del análisis y comprobación de la incidencia y  de la necesidad inminente de la prestación del servicio de manera  presencial.

El partner contará con al menos un equipo en depósito proporcionado por Realsec, sin coste alguno, para poder sustituir equipos defectuosos lo antes posible. En caso de defecto, el partner entregará el equipo nuevo al cliente y devolverá el defectuoso a Realsec, para su análisis.

Realia Technologies · C/ Orense, 68 Planta 11 Izda, · 28002 · Madrid · ESPAÑA

**Documento confidencial**



Esquema de formación Cryptosec OpenKey.

*r* **cisec** 7

Realsec enviará un nuevo equipo para sustituir cualquier equipo en depósito que deba ser utilizado en el cliente final.

El plazo normal de RMA será de 8 horas a contar desde el momento en que se estime por parte de Realsec que el equipo esta defectuoso y deberá ser remplazado.

## SERVICIO DE MANTENIMIENTO Y SOPORTE 8x5 COBERTURA Y NIVELES Y COMPROMISOS (SLA,s)

### 1.- SERVICIO DE MANTENIMIENTO Y SOPORTE 8 x5

El contrato de Mantenimiento 8x5 le da derecho al cliente a los siguientes servicios:

#### 1.1- Actualización de versiones

Suministro de las nuevas versiones software de los productos, en el caso de las aplicaciones, y de las nuevas versiones del firmware del HSM incorporado en el appliance servidor.

#### 1.2- Atención y Soporte Técnico

Incluye la atención y asistencia técnica para la correcta explotación del producto, así como el soporte técnico para la resolución de incidencias y problemas técnicos derivados del producto.

La asistencia y soporte técnico se prestará: telefónicamente, a través de correo electrónico o de forma presencial, en casos de extrema gravedad de la incidencia, con una cobertura horaria de lunes a viernes, en horario de oficina.

#### 1.3- Niveles y Compromisos del Servicio de Mantenimiento

La prestación del Servicio de Mantenimiento y Soporte de REALSEC se estructura en los siguientes tres niveles de atención y compromisos de nivel de servicio. Los niveles de Soporte 1 y 2 deberán ser asumidos directamente por el Partner.

#### 1.4- Servicios de RMA o sustitución de equipamiento hardware.

Mientras el cliente se mantenga con un contrato de mantenimiento vigente y al día en pagos, se incluye la sustitución del HSM dentro de dicha garantía de mantenimiento, en caso de que sea necesario, según los criterios establecidos por Realsec, después de haber hecho las pruebas oportunas.

En relación al hardware de los appliances, estos están garantizados durante 3 años a partir de la compra de los equipos.

#### Nivel de Soporte

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Esquema de formación Cryptosec OpenKey.

p class 7

Incluye atención y asistencia técnica telefónica o por email para:

- Proporcionar información post-venta de los productos.
- Soporte para la configuración de software y hardware; preguntas sobre actualización de versiones; recopilación de información técnica para la identificación de problemas.
- Determinar la base de un problema.
- Proporcionar soporte básico sobre los productos estándar, protocolos y características.
- Documentación sobre manuales, guías, asesoramiento técnico y orientación sobre configuración, procedimientos y funciones de los productos.
- Dependiendo del caso y su complejidad, acceso remoto a los equipos del CLIENTE (previa autorización) para la subsanación de problemas.

**Nivel de Soporte 2:**

Incluye la atención y asistencia técnica telefónica o por email para:

- Proporcionar soporte para resolver errores de configuración, solución de problemas, simular configuraciones complejas, resolver problemas de hardware y software, pruebas de compatibilidad antes de hacer el despliegue dentro de la red de producción; protocolos y características, diagnóstico de problemas de forma remota; reproducción de problemas; configuración del producto (HSM) con un esquema de pruebas definido por el cliente.
- Soporte para la adaptación de un HSM a la red del cliente.
- Actualización de un producto (firmware y software)
- Aplicación de parches.
- Soporte para el manejo y trabajo de Claves con el HSM.
- Orientación y soporte sobre configuraciones, procesos y funciones de las herramientas con las que trabajan los productos.
- Asistencia técnica "in situ", siempre y cuando se considere que con ésta se va a poder solucionar el problema.

En el caso de que el técnico local del PARTNER local no supiera como o no pudiera resolver la incidencia, éste elevará la incidencia al Nivel 3 de Soporte, a través de la Web de Soporte Técnico Central de REALSEC en ESPAÑA ( https://hq.realsec.com ), o bien contactando al teléfono de Soporte Central de REALSEC España, para ser atendido, en la franja horaria de cobertura del tipo de Mantenimiento contratado( 8x5).

**Nivel 3 de Soporte:**

Incluye la atención y asistencia técnica telefónica o por email para:

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

r clase 7

- •.-    Que el servicio de Soporte Central de REALSEC se ocupe de resolver la incidencia, bien facilitando las correspondientes instrucciones al cliente, o, en su caso, al ingeniero local del PARTNER, en cuanto a las acciones técnicas a realizar para su resolución.

- •.-    En el caso de que el servicio de soporte Central de REALSEC ESPAÑA no consiga resolver la incidencia, la reportará al área de Desarrollo e I+D de REALSEC para que esta se ocupe de su resolución.

- •.-    Una vez identificado el origen de la incidencia y su solución, el equipo de soporte de REALSEC ESPAÑA trasladará la solución al ingeniero del PARTNER o bien directamente al cliente para su aplicación.

- •.-    Una vez aplicada la solución en el entorno del cliente y que éste confirme por email la resolución de la incidencia, ésta se dará por resuelta y cerrada.

**1.5- Horarios de atención y medios de contacto para recibir mantenimiento**

Para recibir el servicio de Mantenimiento y Soporte 8x5,  el cliente, deberá de contactar con los siguientes teléfonos y direcciones:

**PARTNER**

- •   •      -      Teléfono de Soporte, en horario de oficina :
- •   •      -      Core electrónico :
- •   •      -      Pagina web de atención de soporte:

**REALSEC ESPAÑA**

- •   •      -      Teléfono de Soporte, en horario de oficina : +34 91 449 03 30
- •   •      -      Correo electrónico : techsupport@realsec.com
- •   •      -      Pagina web de atención de soporte : https://hq.realsec.com

Para recibir atención técnica el cliente deberá de facilitar a REALSEC los siguientes datos:

- •   •      -      Nombre del producto
- •   •      -      Número de serie del appliance servidor.
- •   •      -      Número de serie del HSM .
- •   •      -      Versión del firmware y software.

**2 .- Niveles de servicio y tiempos de respuesta en atención 8x5**

Realía Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial



La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

| NIVEL DE GRAVE DAD DEL ERROR | DESCRIPCIÓN | TIEMPO MEDIO DE ATENCIÓN | TIEMPO MEDIO DE SOLUCIÓN |
|---|---|---|---|
| 1 | Un error aislado de software o hardware que deja al producto inoperable o causa una falla catastrófica en el producto, un impacto mayor y grave en el sistema, por ejemplo, caída de sistema. Un defecto reportado en el producto que ha sido licenciado, que no puede ser resuelto razonablemente, en la cual hay una condición de emergencia que restringe significativamente el uso del producto, para realizar funciones necesarias para el negocio. La incapacidad de usar el producto o un impacto crítico en la operación, requiere de solución inmediata. | 48 (cuarenta y ocho) horas | REALSEC se compromete a dar un tiempo de solución no Superior a las 48 (cuarenta y ocho) horas, siempre que existe derecho a reposición del equipo. |
| 2 | Un error aislado de software o hardware que substancialmente degrada el rendimiento de producto o que restrinja materialmente al negocio, por ejemplo un impacto moderado en el sistema o sistema suspendido. Esta clasificación es un defecto reportado bajo el producto licenciado, el cual restringe el uso de una o más características del producto licenciado para realizar funciones necesarias para el negocio, pero no restringe completamente el uso del producto licenciado. Capacidad para usar el producto licenciado, pero una función no está disponible y las operaciones son severamente afectadas. | 48 (cuarenta y ocho) horas | REALSEC se compromete a dar un tiempo de solución no Superior a las 48 (cuarenta y ocho) horas. |
| 3 | Un error aislado de software o hardware que causa solo un impacto menor en el uso del producto y/o un impacto menor en el sistema; los resultados: impacto operativo. La gravedad del defecto en el nivel 3 es un defecto reportado en el producto licenciado que restringe una o más características del producto para realizar funciones básicas necesarias para el negocio. El defecto puede ser fácilmente resuelto. El defecto puede causar algunas restricciones funcionales, pero esto no tiene un impacto crítico o severo en las operaciones. | 48 (cuarenta y ocho) horas | REALSEC se Compromete a dar un tiempo de solución no superior a las 48 (cuarenta y ocho) horas. |

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

realsec 7

### 3. Matriz De Escalamiento

1. CLIENTE
2. PARTNER
3. REALSEC

### 4. Contactos de Matríz de Escalamiento:

| AREA | TELÉFONO | CORREO ELECTRÓNICO |
|---|---|---|
| CENTRO DE SOPORTE PARTNER | | |
| Soporte Tícnio REALSEC Espuma | +34 91 449 03 30 | techsupport@realsec.com https://bu.realsec.com |

REALSEC prestará, con carácter general, la asistencia técnica al CLIENTE, de forma remota, de acuerdo con lo descrito en los puntos anteriores, hasta conseguir la correcta explotación del producto, así como el soporte técnico preciso para la resolución de las incidencias relacionadas con el mismo.

Cuando para la resolución de una incidencia relacionada directamente con el producto, se requieran la intervención física y presencial, REALSEC desplazará a las instalaciones del CLIENTE un ingeniero técnico experto en el producto, solamente cuando esta tarea sea imposible de ser asumida por el parte, según sea determinado de forma consensuada entre Realsec y el Partner.

Dicha presencia, en función de la tipología del incidente y la localización del CLIENTE, se producirá a la mayor brevedad posible, teniendo en cuenta que los técnicos deberán ser desplazados desde España, México o USA, a partir del análisis y comprobación de la incidencia y de la necesidad inminente de la prestación del servicio de manera presencial.

El parte contara con al menos un equipo en depósito proporcionado por Realsec, sin coste alguno, para poder sustituir equipos defectuosos lo antes posible. En caso de defecto, el parte entregaran el equipo nuevo al cliente y devolverá el defectuoso a Realsec, para su análisis. Realsec enviara un nuevo equipo para sustituir cualquier equipo en depósito que deba ser utilizado en el cliente final.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

# ANEXO E

### Plan de actualizaciones de Realsec

El Plan de actualizaciones garantiza que los clientes de Realsec siempre utilizan la última tecnología de Realsec sin tener que estimar su presupuesto para software o recursos administrativos. Este programa exclusivo para el software y hardware con licencia obtenido a través de un contrato de compra, dota a su organización de acceso inmediato a todas las actualizaciones de productos mientras dure el período de cobertura. La gestión de las actualizaciones de software nunca ha sido más fácil.

El plan de actualizaciones de Realsec le garantiza el menor coste administrativos. Los clientes pueden realizar un seguimiento de las últimas versiones de software de las distintas soluciones sin que ello suponga un gran consumo de recursos y de tiempo. El Plan de actualizaciones de Realsec optimiza los gastos administrativos asociados al mantenimiento del software al día y a la actualización de múltiples usuarios en varios departamentos y ubicaciones.

Cuando se lanza una nueva versión de un producto o un parche para el que su organización tiene cobertura del Plan de actualizaciones, Realsec le envía automáticamente un aviso de actualización y le simplifica las descargas de actualizaciones desde una única ubicación central. Gracias a las alertas de actualización proactivas y a las descargas electrónicas centralizadas, puede acceder a actualizaciones de software de Realsec e implantarlas en toda su organización de manera rápida y eficaz. Toda la información necesaria relativa a cada nueva actualización estará de igual forma disponible para su descarga y/o consulta en línea.

Además de las actualizaciones debidas a la evolución de nuestros productos, Realsec ejerce un rol proactivo en la protección de sus productos, dedicando gran parte de sus recursos a la búsqueda de vulnerabilidades de los distintos componentes que conforman nuestra suite de soluciones, incluyendo vulnerabilidades del Sistema Operativo, Base de Datos, etc..., de forma que periódicamente puede recibir actualizaciones de seguridad que le ayudarán a mantener sus productos actualizados y protegidos.

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Esquema de formación Cryptosec OpenKey.

6ª misse 7

# ANEXO F

Tabla de Contenidos

Formación HSM Cryptosec                          2

Formación Cryptosec OpenKey CA                   3

Formación Cryptosec OpenKey RA                   5

Formación Cryptosec OpenKey VA                   6

Formación Cryptosec OpenKey TSA                  7

Formación CryptoSign Server                      9

Formación Cryptosec Mail                         10

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

*r* **clase** 7

### Formación HSM Cryptosec

*Instalación del hardware*

*Instalación del software y driver*

*Esquema de funcionamiento*

*Gestión de tarjetas*

*Proceso de inicialización*

*Gestión de usuarios*

*Gestión de claves*

*Backup y Restauración de claves.*

### Formación Cryptosec OpenKey CA

*Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Generación de usuarios. Roles.*

*Definición de la idea de cadena de certificación.*

*Importancia y responsabilidad de la cadena de certificación.*

*Esquema de herencia de los atributos de los certificados partiendo de un modelo de certificado autofirmado que pretenda generar una cadena de certificación*

*Generación de certificado de CA Root o de CA Subordinada*

a) Petición (Subordinada).
b) Importación del certificado (Subordinada).
c) Definir los atributos que estarán inmersos en el certificado electrónico (Root).
d) Generación de certificado autofirmado.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

**Documento confidencial**

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.



Esquema de formación Cryptosec OpenKey.

*Modelo de comunicación y su no repudio usando certificados de CA Subordinada*

a) Generación de certificado de comunicaciones para Autoridades de Certificación Subordinadas.
b) Aceptación de conexión de Autoridades de Certificación Subordinadas.
c) Validación de la identidad de una CA Subordinada.

*Gestión de CRL*

a) Configuración de puntos de distribución
b) Configuración de frecuencia de generación

*Configuración de políticas de certificación*

a) Definición de políticas y su relación con el uso de los certificados.
b) Asignación de atributos y usos de la clave.
c) Definición de asignación de CRL
d) Definición de la asignación de las DPC.
e) Definición de la asignación OCSP.
f) Definición de los subject alternatives name.
g) Definición de Name constraints.
h) Definición que Issuer Alternative Name.
i) Definición del Subject Key Identifier.
j) Ensamblado y unión de atributos de certificados y su visualización en los distintos sistemas operativos.
k) Definición de la cadena de certificación y sus consecuencias en la definición de atributos dentro de los certificados.
l) Definición de las políticas presenciales y no presenciales en el factor de generación de certificados electrónicos.

*Backup y restauración*

a) Políticas de Backup y los roles asociados a la operativa del producto.
b) Definir las formas de exportar y trasladar los backups .

*Auditoría de Logs*

a) Características de los logs y los elementos de seguimiento por acción.
b) Responsabilidades del perfil de auditoría que tiene acceso a los logs.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

*Exportación de ficheros de auditoría*

## Formación Cryptosec OpenKey RA

### *Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

### *Generación de usuarios, Roles.*

### *Generación de certificados de comunicaciones con CA.*

a) Generación de Request de certificación.
b) Envío de Request a la CA.
c) Aceptación de certificado emitido y verificación de la cadena de certificación.

### *Gestión de certificados*

a) Gestión de peticiones de certificado.
b) Gestión de peticiones de revocación.
c) Auditoría de certificados emitidos.

### *Backup y restauración.*

a) Políticas de Backup y los roles asociados a la operativa del producto.
b) Definir las formas de exportar y trasladar los backups.

### *Auditoría de Logs.*

a) Características de los logs y los elementos de seguimiento por acción.
b) Responsabilidades del perfil de auditoría que tiene acceso a los logs.
c) Exportación de ficheros de auditoría

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 - Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

CryptosecOpenKey VA

*Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Generación de usuarios. Roles.*

a) Creación de usuarios respecto a roles, y su relación con la inicialización de los equipos.
b) Definir los distintos roles que están desplegados en la operación de la plataforma.

*Generación de certificados de comunicaciones con VA.*

*Generación de Request de certificación.*

a) Proceso de creación de una estructura RSA PKCS#10.
b) Atributos que estarán inmersos en la RSA PKCS#10..
c) Tipos de formatos en los cuales pueden ser generadas las solicitudes de certificación.

*Importación de certificado de VA y cadena de certificación de emisión.*

a) Verificación de la cadena de confianza.
b) Importación certificación para VA.

*Configuración de la Autoridad de Validación.*

a) Fuentes de estado de los certificados revocados.
b) Parámetros del sistema

*Auditoría del sistema.*

a) Definir la forma de exportar los logs, para poder disponer de vestigios de generación de la operación de la pki.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

CryptosecOpenKey TSA

*Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Generación de usuarios. Roles.*

c) Creación de usuarios respecto a roles, y su relación con la inicialización de los equipos.
d) Definir los distintos roles que están desplegados en la  operación de la plataforma.

*Generación de certificados válidos para TSA.*

a) Proceso de creación de una estructura RSA PKCS#10.
b) Atributos que estarán inmersos en la RSA PKCS#10..
c) Diferentes tipos de formatos en los cuales pueden ser generadas las solicitudes de certificación.
d) Verificación de los usos de certificado electrónico necesario para sellado de tiempo.
e) Incorporación de las autoridades de certificación correspondiente a la cadena de certificación.

*Importación de certificado de sellado de tiempo y cadena de certificación.*

c) Verificación de la cadena de confianza.
d) Importación certificación para VA.

*Generación de política de sellado de tiempo.*

a) Definición de parámetros extra en el token de tiempo.
b) Gestión de políticas de sellado de tiempo.

*Sistema de generación de sellos de tiempo.*

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

a) Análisis de los elementos de conectividad asociados al despliegue de un servicio de tiempo.
b) Consideraciones de los servicios de sincronía horaria, caso de estudio: NTP, o sincronía autónoma de fecha/hora por dispositivo especializados de precisión.
c) Análisis del tipo de trafico TSA que se despliega en el proceso de conectividad entre el cliente y el servicio de tiempo.
d) Verificación de una operación de sellado de tiempo .
e) Discretizar las distintas respuestas que debe definir el protocolo.
f) Analizar una respuesta satisfactoria y verificar los atributos definidos en la estructura perteneciente al estándar de sellado de tiempo correspondiente al RFC 3161.

*Gestión de almacenamiento de los token generados.*

a) Método de política de respaldo sustentado en lotes.
b) Política de mantenimiento y borrado de logs de operación en el servicio de sellado de tiempo.

*Auditoria del sistema.*

a) Gestión de logs y eventos del sistema.

**CryptosecSignServer**

*Instalación y configuración*

d) Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
e) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
f) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Gestión de usuarios del sistema de administración.*

e) Roles soportados.
f) Creación de usuarios indispensables para la operación del equipo

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

*Configuración del sistema*

f) Establecimiento de parámetros de funcionamiento.
g) Integración con sistemas externos.

*Usuario finales.*

e) Gestión de usuarios.
f) Gestión de grupos de usuarios (LDAP , Active Directory).
g) Asignación/revocación de certificados a usuarios

*Gestión de certificados.*

c) Cadenas de confianza.
d) Peticiones e importación de certificados.
e) Renovación

*Auditoría del sistema.*

b) Gestión de logs y eventos del sistema.

*APIS de acceso al sistema de firma*

c) Instalación de librería CSP Windows
d) Instalación de librerías JAVA
e) Desarrollo soportado en CSP
f) Desarrollo soportado en librerías de firma JAVA

**CryptosecSecMail**

*Instalación y configuración*

g) Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
h) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

i) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Gestión de usuarios del sistema de administración.*

g) Roles soportados.
h) Creación de usuarios indispensables para la operación del equipo

*Configuración del sistema*

h) Establecimiento de parámetros de funcionamiento.
i) Modos de funcionamiento.
j) Integración con sistemas externos.
k) Integración con Servicio SMTP corporativo.

*Usuario finales.*

h) Gestión de usuarios y cuentas de correo
i) Importación de certificados.

*Gestión de certificados.*

f) Cadenas de confianza.
g) Peticiones e importación de certificados.
h) Renovación

*Auditoría del sistema.*

g) Gestión de logs y eventos del sistema.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

# EXHIBIT "2"

BARAKAT

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com



February 3, 2015

ICC International Centre for ADR
33-43 avenue du President Wilson
75116 Paris
France

## REQUEST FOR ARBITRATION

Dear Sir or Madam:

By way of this correspondence, Andeantrade, Inc. hereby makes a Request for Arbitration before the International Chamber of Commerce's International Centre for ADR. Pursuant to the procedures set forth by your organization, we provide the information below.

a) **Requesting Party:**
   Andeantrade, Inc. ("Andeantrade")
   c/o Barakat Law, P.A., attorneys for Andeantrade, Inc.
   2701 Ponce de Leon Boulevard, Suite 202
   Coral Gables, FL 33134
   USA
   + 1 305-444-3114
   nory@triallawmiami.com
   service@triallawmiami.com

   **Responding Parties:**
   Realsec, Inc. ("Realsec")
   303 Twin Dolphin Drive, Suite 600
   Redwood City, CA 94065
   USA
   + 1 650-632-4240

   Sebastian Muñoz ("Muñoz")
   303 Twin Dolphin Drive, Suite 600
   Redwood City, CA 94065
   USA
   smunoz@realsec.com

   Hereinafter, the Requesting Party and the Responding Parties will be referred to collectively as the "Parties."

2701 Ponce de Leon Blvd.  Suite 202  Miami, FL 33134
Tel 305 444 3114   Fax 305 444 3115  www.triallawmiami.com

b) **Requesting Party's Attorneys:**
Nory M. Acosta-Lopez, Esq.
Brian Barakat, Esq.
Barakat Law, P.A., attorneys for Andeantrade, Inc.
2701 Ponce de Leon Boulevard, Suite 202
Coral Gables, FL 33134
USA
+ 1 305-444-3114
nory@triallawmiami.com
brian@triallawmiami.com
service@triallawmiami.com

**Responding Parties' Attorney:**
Richard C. Wolfe, Esq.
Wolfe Law Miami, P.A., attorneys for Realsec, Inc.
175 SW 7 Street, Suite 2410
Miami, FL 33130
USA
+ 1 305-384-7370
rwolfe@wolfelawmiami.com

c) **Description and Circumstances of Dispute, Basis for Claims:**

Andeantrade is a prominent technology services company serving government as well as financial, corporate, education, health, industrial, police, and military clients. Andeantrade is an established firm, with over 15 years of experience. They have been recognized with numerous awards for work in the industry, including several CISCO accolades. Andeantrade has offices in Ecuador, Colombia and the United States (Miami, Florida).

The project that forms the basis of this action is the creation of a "PACER-CM/ECF" like service in Ecuador. By way of a public bid, Asetelsos Cia. Ltda. was retained by the "Consejo de la Judicatura" or Department of the Judiciary of the country of Ecuador to procure the technology to enable clerks and judges to electronically sign documents, orders, and judgments. In order to carry out this project, Asetelsos Cia. Ltda. retained Andeantrade to take charge of finding a suitable provider, manage the project, pay import duties and taxes, and ensure the project was completed on schedule as set by the Department of the Judiciary.

Andeantrade then entered into a contract with Realsec on December 11, 2013, (the "Andeantrade/Realsec Contract") whereby Realsec was to furnish all the requisite hardware, software, and technical support necessary for the implementation of the electronic signature technology. The Department of the Judiciary was at all times aware that Asetelsos Cia. Ltda. had retained Andeantrade in order to carry out the electronic signature project, and that Realsec was the company furnishing all requisite hardware, software, and technical support. In fact, progress meetings were routinely held with the

participation of all four parties involved (the Judiciary, Asetelsos, Andeantrade, and Realsec).

The Andeantrade/Realsec Contract included a timeline for the development, testing and delivery of both the hardware and software that is the subject of the Andeantrade/Realsec Contract, with deadlines for the turnover of the entire project, and intermediate deadlines for numerous individual components. During the course of the project's development, Realsec often fell behind on the intermediate deadlines. The timeline was modified on or about March 31, 2014, with the new timeline having been submitted by Realsec itself. This modified timeline was approved by both Asetelsos and the Department of the Judiciary.

Despite the modified timeline, Realsec continued to miss deadlines and continually failed to deliver project components. One critical reason for the missed deadlines was Realsec's failure to assign an adequate number of technicians to complete the project. Realsec regularly had only one or two people on the ground in Ecuador. Moreover, the employees that Realsec had physically installed in Ecuador lacked the technical knowledge to properly participate in meetings where substantial technological issues were discussed.

Further, some of the components that were delivered were not complete, in direct contravention of the terms set forth in the Andeantrade/Realsec Contract relating to the standards for the components. Specifically, a delivery of a number of servers, which were supposed to have been delivered complete with both hardware and software components, were delivered with just the hardware components – thus rendering the delivered components useless.

Realsec was informed of the missed deadlines – in writing – by both Andeantrade and the Department of the Judiciary, all to no avail. As the result of Realsec's continual failure to meet the deadlines set forth by the modified timeline, Andeantrade was forced to rescind the Andeantrade/Realsec Contract pursuant to section 4.2 of same. Andeantrade's rescission of the Andeantrade/Realsec Contract was communicated to Realsec in writing on August 7, 2014.

Additionally, Realsec and/or its president, Sebastian Muñoz sent correspondence to the Department of the Judiciary misrepresenting the level of completion of the project in an attempt to hide the continual delays and missed deadlines on their part.[1] Under belief and information, Realsec and/or its president, Sebastian Muñoz have also sent various letters to Andeantrade business contacts which make unfounded and slanderous allegations against not only Andeantrade, but its President, Oscar Trujillo, personally.

Andeantrade has previously invited Realsec to submit to a voluntary mediation proceeding in an attempt to resolve the dispute as efficiently as possible, and Realsec has denied this request.

---

[1] In response to Realsec's letter, the Department of the Judiciary issued a response indicating that their contract was with Asetelsos, and not Realsec. The Judiciary's response also noted the project delays.

2701 Ponce de Leon Blvd.   Suite 202   Miami, FL 33134
Tel 305 444 3114   Fax 305 444 3115   www.triallawmiami.com

As the result of Realsec's failure to adhere to the terms of the Andeantrade/Realsec Contract and the modified timeline, Andeantrade has suffered serious monetary losses, resulting from both monies already paid to Realsec for the partial installation of components that cannot be used, as well as costs for importing the components, and legal fees. Further, Andeantrade's relationship with Asetelsos has been severely tarnished due to Realsec's actions, resulting in Andeantrade having to pay Asetelsos a penalty for the delays caused by Realsec.

**d) Statement as to the Relief Sought:**
As the result of Realsec's failure to adhere to terms of the Andeantrade/Realsec Contract and the modified timeline, Andeantrade has suffered serious monetary losses, resulting from both monies already paid to Realsec for the partial installation of components that cannot be used, as well as costs for importing the components, and legal fees. As such, Andeantrade is seeking damages in the amount of USD 1,264,181.70 incurred to date, plus any legal fees that may be incurred during the course of this arbitration and any subsequent proceedings.

Andeantrade reserves the right to amend the amount of relief sought upon further evaluation of the negative effects that Realsec's libelous correspondence campaign has had on Andeantrade's pending business negotiations, or the effects of Realsec's failure to adhere to the terms of the Andeantrade/Realsec Contract and the modified timeline on potential litigation between Asetelsos and Andeantrade.

**e) Arbitration Agreement:**
Pursuant to section 10.1 of the Andeantrade/Realsec Contract entered into by the Parties, in the event of any dispute stemming from or related to the Andeantrade/Realsec Contract, this dispute shall be submitted to the ADR process before the International Chamber of Commerce. In the event that the dispute between the Parties is not resolved within forty-five (45) days of submitting the request for dispute resolution, the dispute shall then be submitted to binding Arbitration before the International Chamber of Commerce. The forty-five (45) day deadline may be modified by agreement of the Parties.

A Request for Mediation was submitted by Andeantrade to the International Chamber of Commerce on or about September 23, 2014, but mediation was never concluded because Realsec made it clear they had no interest in settlement. Once that was clear, Andeantrade acquiesced to their refusal to mediate and proceeded directly to arbitration.

A copy of the Andeantrade/Realsec Contract is attached hereto as Exhibit A.

**f) Particulars as to Arbitrator:**
Pursuant to Section 10.1 of the Andeantrade/Realsec Contract entered into by the Parties, the instant matter shall be arbitrated by one (1) Arbitrator.

g) **Particulars as to the Place, Applicable Rules, Language of Arbitration:**

      Pursuant to Section 10.1 of the Andeantrade/Realsec Contract entered into by the Parties, all dispute resolution proceeds are to take place in Miami, Florida, USA.

      The Andeantrade/Realsec Contract is silent as to the applicable rules of law governing the arbitration. However, the Requesting Party proposes adopting United States/Florida law.

      Section 10.1 of the Andeantrade/Realsec Contract indicates that the language of the arbitration shall be Spanish. Consequently, the Arbitrator must be sufficiently fluent in the Spanish language such that they can read documents submitted as evidence, and properly comprehend testimony offered in Spanish. The Requesting Party agrees that while evidence and testimony may be delivered in Spanish, all applicable pleadings and memoranda of law may be delivered in English. The parties agree to use as arbitrator:

Ret. Judge Israel Reyes
One Columbus Center
1 Alhambra Plaza, Suite 1130
Coral Gables, Florida 33134
USA
Tel: +1 305-403-2272
Fax: +1 305-403-2273

      Pursuant to the procedures set forth by the International Chamber of Commerce, the Requesting Party, Andeantrade, Inc. will be submitting the filing fee via wire transfer contemporaneously to the filing of this Request.

      We await confirmation of receipt of this Request and your instructions for proceeding. If you have any questions, please feel free to contact us.

          Respectfully Submitted,

Nory M. Acosta-Lopez
Brian Barakat
BARAKAT LAW, P.A.
2701 Ponce de Leon Boulevard, Suite 202
Coral Gables, FL 33134
USA
Tel: + 1 305-444-3114
nory@triallawmiami.com
brian@triallawmiami.com
service@triallawmiami.com

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

Entre REALSEC INC., inscrita en el registro del Estado de Delaware de los Estados Unidos de América bajo el NO. 4897622, en fecha 12 de noviembre de 2010 y domiciliada en 303 Twin Dolphin Drive, Suite 600, Redwood City, CA 94065, Estados Unidos de América, ("el Vendedor") debidamente representada en este acto por su apoderado SEBASTIAN MUNOZ NAJARRO, español, mayor de edad, titular del pasaporte No. XDA579583, según lo acredita con documento "Written consent of the board of directors" y ANDEANTRADE INC. sociedad mercantil debidamente inscrita en el Estado de Florida de los Estados Unidos de América, domiciliada 10850 NW 21ST Suite # 100 Miami -- Florida, Estados Unidos de América con identificación fiscal No. 77-0676895G(el "Comprador"), debidamente representada en este acto por OSCAR TRUJILLO IZURIETA, ecuatoriano, mayor de edad, titular de la cedula de identidad No. 060213463-7 , según lo acredita con documento "Florida Department of State -- Division of Corporations", han convenido celebrar el presente Contrato de Suministro de Equipos de Tecnología, a regirse por los siguientes considerandos y cláusulas:

Considerando, que el comprador firmó un Contrato con el Consejo Nacional de la Judicatura de Ecuador, en fecha 11 de diciembre de 2013 ("Contrato Principal"), cuyo objeto es el suministro de Equipos de Tecnología, la instalación de los mismos y el entrenamiento que sea necesario para garantizar el funcionamiento de los equipos por los operadores finales.

Considerando, que el Vendedor es una empresa especializada en la procura de dichos equipos y tiene el conocimiento necesario garantizar no sólo el suministro sino la transferencia de tecnología asociada a los mismos;

Considerando, que el Comprador ha decidido contratar con el Vendedor la compra de equipos objeto del Contrato Principal así como el las actividades de instalación, asistencia y formación y transferencia tecnológica relacionada con el adecuado funcionamiento de los equipos;

Las partes han convenido celebrar el presente Contrato de Equipos de Tecnología, a ser administrado de acuerdo a las siguientes Cláusulas:

## PRIMERA. OBJETO DEL CONTRATO.

1.1     El Vendedor suministrará al Comprador los Equipos de Tecnología (los "Equipos"), y prestará los servicios referentes a la asistencia técnica requerida para la instalación, la correcta transferencia de tecnología y la consultoría que a tal efecto sea necesaria (los "Servicios"), de acuerdo a los conceptos establecidos en la Orden de Compra que se anexa al presente Contrato como Anexo A.

1.2     El Cronograma de Entrega de los Equipos y de Prestación de Servicios, se anexa al presente Contrato como Anexo B.

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

**SEGUNDA. PRECIO DE EQUIPOS Y SERVICIOS.**

2.1    Los precios establecidos son aquellos estipulados en el Anexo A, sin que en ellos pueda existir variación alguna que sea reconocida dentro del marco de este Contrato. Los Equipos en la Orden de Compra son los detallados en los ítem 2.2.1 de la misma (los "Equipos"), mientras que los Servicios son los estipulados en el ítem 2.1.2. renglones siguientes (los "Servicios").

2.2    El Monto de los Equipos y Servicios a ser proveídos por el Vendedor es por la cantidad de DOS MILLONES CIENTO QUINCE MIL CIENTO TRECE DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON CUARENTA CÉNTIMOS (USD 2.115.113,40) (el "Precio"), dividido de la siguiente manera:

2.1.1    Una cantidad de UN MILLON QUINIENTOS CUARENTA Y SEIS MIL CUATROCIENTOS SESENTA Y TRES DÓLARES DE LOS ESTADOS UNIDOS AMÉRICA CON CUARENTA CÉNTIMOS (USD 1.546.463,40) por concepto de los Equipos y mantenimientos por cinco años;

2.1.2 Una cantidad de QUINIENTOS SESENTA Y OCHO MIL SEISCIENTOS CINCUENTA DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA (USD 568.650) por concepto de los Servicios.

2.3    El pago del Precio será realizado de acuerdo a los siguientes parámetros:

2.3.1    Una cantidad equivalente al Cincuenta por ciento **(50%)** del valor total, contra firma del siguiente documento, es decir, UN MILLON CINCUENTA Y SIETE MIL QUINIENTOS CINCUENTA Y SEIS DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON SETENTA CÉNTIMOS (USD 1.057.556,70)

2.3.2 Una cantidad equivalente al VEINTE Y CINCO por ciento **(25%)** del valor total, correspondiente a los hitos 1 y 2 del proyecto, tras la finalización de los mismos, es decir, QUINIENTOS VEINTE Y OCHO MIL SETECIENTOS SETENTA Y OCHO DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON TREINTA Y CINCO CÉNTIMOS (USD 528.778,35) .

2.3.3    Una cantidad equivalente al VEINTE por ciento **(20%)** del valor total, correspondiente a los hitos 3 y 4 de implantación del proyecto, tras la finalización de los mismos, es decir, CUATROCIENTOS VEINTE Y TRES MIL VEINTE Y DOS DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON SESENTA Y OCHO CÉNTIMOS (USD 423.022,68) .

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

2.3.4   Una cantidad equivalente al CINCO por ciento (5%) del valor total contra acta de aceptación definitiva la cual deben incluir la obtención de la certificación de acreditación nacional como Autoridad Certificadora por parte del cliente final, es decir CIENTO CINCO MIL SETECIENTOS CINCUENTA Y CINCO DÓLARES DE LOS ESTADOS UNIDOS DE AMÉRICA CON SESENTA Y SIETE CÉNTIMOS (USD 105.755,67).

2.4     Los distintos pagos mencionados deberán ser realizados mediante transferencia bancaria, una vez que se hayan efectivizado las transferencias realizadas por el Consejo Nacional de la Judicatura, esto es al menos 72 horas posteriores a la fecha de acreditación. Los gastos bancarios relacionados con las transferencias en el país del Comprador, serán a su cuenta y los que surjan fuera del territorio del Comprador, serán asumidos por el Vendedor.

### TERCERA. PLAZOS Y CONDICIONES.

3.1     Los Equipos serán entregados en condiciones CIF Miami de acuerdo con los INCOTERMS 2000.

3.2     Se tomará como Fecha de Suministro la fecha de Conocimiento de Embarque (Bill of Lading) y/o de la Guía Aérea (Airway Bill).

3.3.    El Vendedor suministrará al Comprador dos (02) originales y una (01) copia del Conocimiento de Embarque (Master Bill of Lading), con al menos tres (03) días de anticipación a la llegada del buque a puerto Americano. De ser el caso, la Guía Aérea (Airway Bill) las copias serán entregadas con dos (02) días de anticipación a la fecha estimada de llegada de los Equipos.

3.4     Adicionalmente, el Vendedor deberá proporcionar con al menos cinco (05) días de anticipación a la llegada de los Equipos, los siguientes documentos: (i) Certificado de Origen; (ii) Certificado de Calidad; y (iii) tres (03) originales y una (01) copia de la Factura Comercial.

3.5     Los Equipos no podrán ser enviados bajo ninguna circunstancia como mercancía consolidada.

3.6     Los Equipos serán revisados por el Comprador mediante la lista de empaque (Packing List) y el Conocimiento de Embarque y/o de la Guía Aérea.

### CUARTA. PENALIDADES.

4.1     En caso de incumplimiento de las fechas pactadas para la materialización del pago, por causas imputables al Comprador, El Vendedor incrementará el Cero punto Un Por Ciento (0.1%) del pago demorado por cada día. El monto total de dicha penalidad no excederá del Siete Por Ciento (7%) del valor del pago demorado. Esta penalidad entra en efecto el día hábil

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

inmediatamente siguiente a la culminación del lapso establecido para cada caso concreto. No se aplicarán multas cuando existan retrasos en los pagos realizados por parte del Consejo de la Judicatura.

4.2   En Caso de incumplimiento por causas imputables al Vendedor, se deducirán de los pagos los montos relativos a la aplicación de las sanciones estipuladas en la cláusula anterior. Si el incumplimiento del Vendedor está representado en retrasos superiores a un (01) mes calendario de las fechas pautadas en el Cronograma marcado como Anexo B, El Comprador podrá rescindir el presente Contrato mediante comunicación por escrito.

### QUINTA. GARANTÍAS TÉCNICAS.

5.1   El Vendedor garantiza al Comprador que los Equipos a suministrarse serán nuevos, provenientes de la producción corriente. Como garantía se exige la entrega del Certificado de Origen de acuerdo a lo establecido en la Cláusula 3.4.

5.2   El plazo de garantía de los Equipos será de un (01) año contado a partir del acta de aceptación definitiva la cual deben incluir la obtención de la certificación de acreditación nacional como Autoridad Certificadora por parte de CNJ, de acuerdo a los términos de la Ley de Contrataciones Públicas, su reglamento y las disposiciones del Contrato Principal.

5.3   Los reclamos concernientes a las Garantías Técnicas deberán presentarse por escrito y ser dirigidos al representante del Vendedor.

5.4   El Vendedor dará respuesta a cualquier reclamo presentado en un lapso que no exceda los dos días (2) siguientes a la recepción del mismo, de acuerdo al item de Soporte Técnico Especificados en los Pliegos de la CNJ. En dicha respuesta, el Vendedor deberá indicar la forma en la que dará solución al defecto o problema reclamado.

El tiempo máximo para resolver cualquier desperfecto por la garantía por parte del Vendedor será de 7 días hábiles a partir de la fecha de recepción de reclamo presentado por el Comprador. En caso que la respuesta ofrecida por el Vendedor se concrete en la sustitución del Equipo, la condición de entrega será la misma estipulada en la cláusula 3.1, corriendo el Vendedor con todos los gastos asociados a la sustitución el Equipo que presente problemas.

5.5   Si más del Veinte Por Ciento (20%) de los Equipos suministrados presentan el mismo defecto, este será considerado un defecto masivo, por lo que obliga al Vendedor a reponer la totalidad de los Equipos o a devolver el importe de los mismos, en un lapso no mayor a treinta (30) días calendario continuos siguientes a la recepción del reclamo que reporte el defecto masivo. En el

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

caso de la reposición total, serán por cuenta del Vendedor los gastos relacionados al envío e instalación de los nuevos Equipos.

### SEXTA. CALIDAD.

6.1    Los Equipos objeto de este Contrato deben ser entregadas por el Vendedor conforme a las normas y/o especificaciones técnicas, características de Calidad, modelo o muestras y particularidades que se describen en los Anexos del presente Contrato, respondiendo de los defectos por la construcción, materiales y manufactura empleados en la fabricación de la misma, así como de su correcto funcionamiento. El alcance de esta responsabilidad incluye las alteraciones de calidad detectadas después de la fecha de la Firma del Acta de Aceptación Definitiva, y que provengan de algún vicio oculto relacionado con errores en el diseño, fabricación y/o instalación de los Equipos. En este caso, el Vendedor se obliga igualmente a indemnizar al Comprador por las pérdidas y daños y perjuicios causados.

6.2    Los reclamos por Concepto de calidad, deberán ser dirigidos al representante del Vendedor, adjuntando todas las evidencias que los sustenten.

### SÉPTIMA. ENVASES Y EMBAJALES.

7.1    Los Equipos objeto de este Contrato deben envasarse y embalarse en correspondencia con las normas internacionales previstas para este tipo de mercancías y de conformidad con las exigencias de la transportación marítima, aérea o terrestre, con la protección necesaria tanto exterior como interiormente, de forma tal que garantice su integridad y conservación durante su manipulación y traslado hasta los almacenes del Vendedor.

7.2    De no tomar todas las precauciones necesarias para garantizar la integridad de los Equipos durante el transporte de los mismos, el Vendedor será responsable de los daños que se le determinen al contenedor en destino y responderá económicamente por este concepto, en un lapso no mayor de treinta (30) días calendario siguientes a la fecha en la que el daño haya sido determinado.

### OCTAVA. MARCAS.

8.1    Las señales distintivas de cada Equipo serán escritas, en la parte exterior, en idioma español, con tinta indeleble, en la parte izquierda superior y en el lado delantero.

8.2    La marcación externa de los bultos debe contener la siguiente información:

*Consignatario:*          Xxxxxxxxxxxxxx




# CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

*Dirección*

*Completa*

## NOVENA. CASO FORTUITO Y FUERZA MAYOR

9.1    Las Partes no serán responsables por el incumplimiento de las obligaciones derivadas del presente Contrato, cuando las causas que se le imputen se deban a razones que escapen de su control y sin su culpa o negligencia, tales como; guerra (declarada o no declarada), operaciones de guerrilla, insurrecciones o tumultos, inundaciones, terremotos, explosiones, accidentes graves, epidemias, o restricciones por cuarentena o cualquier acto de los Gobiernos, que establezcan prioridades, órdenes de racionamiento o distribución especial que afecten los bienes y/o servicios objeto de este Contrato, huelgas o perturbaciones laborales que causen el cese, retardo o interrupción del trabajo, demora en el transporte u otros atrasos justificables debido a casos fortuitos, fuerza mayor o causa extraña no imputable, debidamente comprobadas. En todo caso, la parte afectada participará a la otra parte cualquier demora mediante justificación dada por escrito dentro de los dos (02) días hábiles siguientes al momento en que se tenga conocimiento del hecho que causó el o los atrasos, indicando la fecha más próxima en que podrán ejecutarse las obligaciones contempladas en el presente Contrato. Dentro de los 8 (08) días hábiles siguientes contados a partir del inicio del hecho que causó la interrupción del Contrato, se le entregará a la otra parte los documentos oficiales emitidos por la autoridad competente. Si el caso fortuito o fuerza mayor dura más de Ciento Veinte (120) días continuos, o las partes no crean las condiciones para continuar con la ejecución del Contrato, se procederá entonces a discutir su resolución.

## DÉCIMA. DE LA CONFIDENCIALIDAD

Esta cláusula contempla la protección y preservación de la Información Confidencial de las Partes.

1) LAS PARTES deberán mantener toda la Información en forma confiable y confidencial y responderán civil y penalmente por la divulgación realizada por sus empleados, agentes, socios, y cualquier persona que hubiere obtenido esta información de forma directa o indirecta proveniente de la CNJ, salvo autorización escrita y expresa de LAS PARTES. LAS PARTES no divulgarán ninguna Información a terceras personas.

2) LAS PARTES pueden entregar información confidencial a los empleados, consultores o asesores de REALSEC o ANDEANTRADE INC. en la medida que sea necesario y, asumirá la responsabilidad por el mal uso que el personal a su cargo pudiera dar a dicha información. El acceso a tal Información será entregada por una legítima necesidad y será responsabilidad absoluta de REALSEC o ANDEANTRADE INC. y por tanto, responderá por el mal uso que realice con ella.

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

3) REALSEC y ANDEANTRADE se abstendrán de utilizar la Información para fines o en formas que implique una violación a cualquier ley o regulación.

4) La Información Confidencial de LAS PARTES no será reproducida ni duplicada de ninguna manera, salvo que sea para el legítimo uso interno de REALSEC o ANDEANTRADE INC. en relación con la prestación del servicio.

5) Por ningún motivo, ninguna de las dos empresas podrá hacer ofertas laborales ni económicas al personal en nómina perteneciente tanto a REALSEC como a ANDEANTRADE INC. sea de manera directa o indirecta, con la salvedad que por algún factor de estratégica o que conviene a las dos empresas sea autorizada de manera escrita por sus representantes autorizados

6) Toda Información que LAS PARTES entreguen deberá ser devuelta luego de que su necesidad haya cesado, o contra solicitud de LAS PARTES y, en cualquier caso, a la terminación de este Contrato sin perjuicio de ninguna otra disposición en el presente Contrato, la divulgación de Información de LAS PARTES no serán impedida en los siguientes casos:

   (a) Si se respondiera a un tribunal válido u otra entidad gubernamental competente para solicitarla en el Ecuador;.
   (b) Si fuese requerida de alguna otra forma por la ley, a pesar que Las Partes hayan comunicado tal hecho previamente y hayan hecho esfuerzos razonables para obtener una orden de protección que disponga que la divulgada Información de Las partes sea utilizada únicamente para los fines para los cuales se emitió tal orden o requerimiento legal.

### DECIMA PRIMERA. RESOLUCIÓN DE CONTROVERSIAS.

10.1    En caso de desavenencias derivadas del presente contrato o relacionadas con él, las partes se comprometen a someterlas al proceso de solución de desavenencias del Reglamento ADR de la Cámara de Comercio Internacional. A falta de resolución de las desavenencias según dicho Reglamento dentro de los 45 días siguientes a la presentación de la demanda de ADR, o al vencimiento de otro plazo que hubiera sido acordado por escrito por las partes, dichas desavenencias serán definitivamente resueltas de acuerdo con el Reglamento de Arbitraje de la Cámara de Comercio Internacional por un árbitro nombrado conforme a dicho Reglamento de Arbitraje. El arbitraje será en idioma español, en la Ciudad de Miami, Estado de Florida, Estados Unidos de América.

10.2    Al momento de iniciarse cualquier de los procedimientos establecidos en la cláusula anterior, así como para envío de cualquier otra notificación relativa al presente Contrato, las notificaciones deberán ser enviadas a las siguientes direcciones:

# CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

Si al Comprador:    A/A Oscar Trujillo

10850 NW 21ST Suite #100

Miami, FL, 33172, USA

Tel. + 1 305-3966843

Email: otrujillo@andean-trade.com

Si al Vendedor:    A/A Sebastián Muñoz

303 Twin Dolphin Dr. Suite 600

Redwood City, CA 94065, USA

Tel. +1 650 632 4240

Email: smunoz@realsec.com

## DÉCIMA SEGUNDA. TERMINACIÓN DEL CONTRATO.

10.1    El presente Contrato podrá terminarse por las siguientes causas:

10.1.1  Por el cumplimiento de todas y cada una de las obligaciones aquí estipuladas, sin que tengas las Partes nada que reclamarse;

10.1.2  Por mutuo acuerdo, en aquellos casos en los que por caso fortuito o fuerza mayor no se posible la ejecución de las obligaciones aquí estipuladas;

10.1.3  Por incumplimiento de alguna de las partes, en cuyo cáso, además de las sanciones previstas en la cláusula 4.1, la parte que incumpla alguna de sus obligaciones y no subsane dicho incumplimiento en un lapso de treinta (30) días calendario continuos a la fecha de la recepción de la notificación que a tal efecto emita la otra parte, deberá pagar una penalidad de equivalente al Veinte Por Ciento (20%) del monto total de este Contrato, sin perjuicio de las distintas acciones civiles o penales que puedan derivarse se dicho incumplimiento.

## DECIMA TERCERA. RESPONSABILIDADES.

6.1    AndeanTrade proporcionara una copia de su contrato interno con Aseltesos y asume por la presente clausula, todas las responsabilidades derivadas de dicho contrato. Cualquier incumplimiento por parte de Aseltesos, deberá ser asumido por Andean, y estarán sujetas a las penalidades descritas en la cláusula CUARTA del presente contrato.

6.2    Andean Trade deberá asumir las tareas descritas en el Anexo C del presente contrato. El alcance del proyecto será el descrito en las bases publicadas en la adjudicación a Aseltesos y bajo el cronograma descrito en el Anexo B del presente contrato.

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

6.3    Andean Trade deberá asumir igualmente el soporte de primer nivel durante el primer año, y soporte de primero y segundo nivel durante los cuatro años siguientes a la finalización del proyecto, según documento descrito en Anexo D. Andean Trade deberá proporcionar el entorno adecuado para proporcionar soporte 24x7 en aquellas unidades de producción, donde el cliente así lo ha contratado.

6.4    Realsec asume los compromisos de actualizaciones descritos en **Anexo E** hacia Andean Trade, quien a su vez deberá trasladar dichas actualizaciones al cliente final a través de Aseltesos.

6.5    Realsec asume los compromisos de capacitación descritos en el alcance del proyecto y en el **Anexo F.** Andean Trade se compromete a incluir dentro de este proceso de capacitación los recursos necesarios para poder ofrecer soporte de primer y segundo nivel. Realsec se reserva el derecho de invitar a dicha capacitación a ingenieros adicionales.

6.6    Andean Trade asume los gastos necesarios para terminar la capacitación que se efectuara en España, para las 6 personas de CNJ, incluyendo gastos de transporte, hotel y dietas.

6.7    Andean Trade deberá asumir las jornadas de acompañamiento local especificadas en los pliegos publicados. Así mismo, cuando el cliente reporte algún tipo de problema o incidencia que requiera presencia física, esta deberá ser asumida igualmente por personal de Andean Trade.

## DISPOSICIONES FINALES.

11.1    Este Contrato entrará en vigencia con la firma del mismo y permanecerá vigente hasta el total cumplimiento de las obligaciones aquí contraídas por las Partes.

11.2    Todos los cambios o modificaciones referentes al presente Contrato, deberán constar por escrito y estar suscritas por ambas partes;

11.3    Los derechos y obligaciones de las Partes no podrán ser transferidos a terceros sin el previo consentimiento otorgado por escrito de la otra parte. En caso de no obtener el consentimiento, la transferencia será nula, y la parte original continuará siendo responsable por la ejecución de las obligaciones y por los daños y perjuicios que pueda generar la no ejecución de las mismas.

11.4    Las partes acuerdan y convienen que los datos e información relacionados con el presente Contrato son de carácter confidencial, por lo que se comprometen a no hacer públicos los términos

## CONTRATO DE PRESTACIÓN DE SERVICIOS EMPRESARIALES

y demás condiciones establecidas en el mismo, a menos que una parte autorice a la otra, por escrito, a divulgar algún particular de los contenidos del presente contrato.

Se firman dos (02) ejemplares de un mismo tenor y a un solo efecto.

En Quito, a los 11 de diciembre de 2013.

Por El Vendedor                                          Por el Vendedor

_____                    _____
SEBASTIÁN MUÑOZ                              OSCAR TRUJILLO

ANEXOS

ANEXO A. Orden de Compra de los Equipos y Servicios

ANEXO B. Cronograma de Envío de los Bienes y Ejecución de Servicios. (VER ADJUNTO)

ANEXO C. Descripción de las tareas que corresponden a Andean (VER ADJUNTO)

ANEXO E. Descripción de servicios de actualización (VER ADJUNTO)

ANEXO F. Descripción de servicios de capacitación (VER ADJUNTO)

CRONOGRAMA ACTUALIZADO.mpp

| ID | | Task Mode | Task Name | Duration | Start |
|---|---|---|---|---|---|
| 1 | | | PROYECTO FIRMAS DIGITALES CONSEJO DE LA JUDICATURA | 232 days | Mon 02/12/13 |
| 2 | | | Firma del Contrato del Proceso | 5 days | Mon 02/12/13 |
| 3 | | | Consultoría | 93 days | Mon 02/12/13 |
| 4 | | | Estudio de Documentación Relevante | 15 days | Mon 09/12/13 |
| 5 | | | Análisis de Requisitos Técnicos | 43 days | Mon 02/12/13 |
| 6 | | | Identificación de Requisitos | 12 days | Mon 02/12/13 |
| 7 | | | Elaboración de la documentación | 16 days | Wed 18/12/13 |
| 8 | | | Validación de documentación | 15 days | Thu 09/01/14 |
| 9 | | | Definición de la ceremonia de generació | 47 days | Thu 30/01/14 |
| 10 | | | Preparación | 15 days | Thu 30/01/14 |
| 11 | | | Elaboración de la documentación | 17 days | Thu 20/02/14 |
| 12 | | | Validación de la documentación | 15 days | Mon 17/03/14 |
| 13 | | | Definición de la DPC | 35 days | Thu 20/02/14 |
| 14 | | | Evaluación | 3 days | Mon 07/04/14 |
| 15 | | | Elaboración de la documentación | 10 days | Thu 20/02/14 |
| 16 | | | Validación de la documentación | 7 days | Mon 17/03/14 |
| 17 | | | Implementación | 68 days | Thu 10/04/14 |
| 18 | | | Desarrollo | 48 days | Thu 10/04/14 |
| 19 | | | Elaboración de manuales de explotación | 20 days | Tue 17/06/14 |
| 20 | | | Implantación | 32 days | Tue 15/07/14 |
| 21 | | | Entorno de Test | 14 days | Tue 15/07/14 |
| 22 | | | Implantación CA Raíz | 6 days | Tue 15/07/14 |
| 23 | | | Implantación Resto de Componentes | 4 days | Wed 23/07/14 |
| 24 | | | Pruebas | 4 days | Tue 29/07/14 |
| 25 | | | Entorno de Produccion | 14 days | Mon 04/08/14 |
| 26 | | | Implantación CA Raíz | 6 days | Mon 04/08/14 |
| 27 | | | Implantación Resto de Componentes | 4 days | Tue 12/08/14 |
| 28 | | | Pruebas | 4 days | Mon 18/08/14 |
| 29 | | | Entorno de Contingencia | 4 days | Fri 22/08/14 |
| 30 | | | Implantación | 2 days | Fri 22/08/14 |
| 31 | | | Pruebas | 2 days | Tue 26/08/14 |
| 32 | | | Capacitación | 14 days | Thu 28/08/14 |
| 33 | | | Responsables Técnicos | 14 days | Thu 28/08/14 |
| 34 | | | Preparación para la certificación | 25 days | Wed 17/09/14 |

CRONOGRAMA ACTUALIZADO.mpp

| Finish | Predecessors | Resource Names | Cost |
|---|---|---|---|
| Tue 21/10/14 | | | $ 3.356.170,88 |
| Fri 06/12/13 | | | $ 171,00 |
| Wed 09/04/14 | | | $ 1.650.000,00 |
| Fri 27/12/13 | 2 | | $ 350.000,00 |
| Wed 29/01/14 | | | $ 350.000,00 |
| Tue 17/12/13 | | | $ 50.000,00 |
| Wed 08/01/14 | 6 | | $ 150.000,00 |
| Wed 29/01/14 | 7 | | $ 150.000,00 |
| Fri 04/04/14 | | | $ 550.000,00 |
| Wed 19/02/14 | 5 | | $ 350.000,00 |
| Fri 14/03/14 | 10 | | $ 150.000,00 |
| Fri 04/04/14 | 11 | | $ 50.000,00 |
| Wed 09/04/14 | | | $ 400.000,00 |
| Wed 09/04/14 | 9 | | $ 200.000,00 |
| Wed 05/03/14 | 10 | | $ 50.000,00 |
| Tue 25/03/14 | 11 | | $ 150.000,00 |
| Mon 14/07/14 | | | $ 200.000,00 |
| Mon 16/06/14 | 3 | | $ 100.000,00 |
| Mon 14/07/14 | 18 | | $ 100.000,00 |
| Wed 27/08/14 | | | $ 1.106.000,00 |
| Fri 01/08/14 | | | $ 350.000,00 |
| Tue 22/07/14 | 17 | | $ 150.000,00 |
| Mon 28/07/14 | 22 | | $ 150.000,00 |
| Fri 01/08/14 | 23 | | $ 50.000,00 |
| Thu 21/08/14 | | | $ 456.000,00 |
| Mon 11/08/14 | 21 | | $ 200.000,00 |
| Fri 15/08/14 | 26 | | $ 200.000,00 |
| Thu 21/08/14 | 27 | | $ 56.000,00 |
| Wed 27/08/14 | | | $ 300.000,00 |
| Mon 25/08/14 | 25 | | $ 150.000,00 |
| Wed 27/08/14 | 30 | | $ 150.000,00 |
| Tue 16/09/14 | | | $ 200.000,00 |
| Tue 16/09/14 | 20 | | $ 200.000,00 |
| Tue 21/10/14 | 32 | | $ 200.000,00 |

# ANEXO C

## PLAN DE PROYECTO

**Actividades**

1.1. Partner (dirección de proyecto). El partner asume la contratación del PMP, según las características descritas en el pliego de CNJ y asumirá los requisitos de presencia física exigida en los mismos. Se espera del PMP que elabore las correspondientes actas de seguimiento de cada una de las reuniones de avance y entrega del proyecto y vigile el buen cumplimiento por ambas partes de los compromisos asumidos. El PMP actuara de interlocutor entre los ingenieros del cliente y los de Realsec y se deberá encargar de recopilar toda la información y documentación necesaria que sea solicitada por Realsec para el desarrollo correcto del proyecto.

1.2. Ambos (Estudio de documentación relevante) Participación requerida por parte de Andean Trade en este apartado, según los requerimientos a desarrollar por parte de Realsec.

1.3. Realsec (Análisis de requisitos Técnicos)

1.4. Ambos (Definición Ceremonia de Claves de la CA). Andean Trade deberá proporcionar la logística necesaria, en caso de que el cliente quiera hacerlo público o invitar a la prensa.

1.5 Ambos (DPCs y PCs). Realsec puede reclamar ayuda a Andean Trade a la hora de elaborar determinada documentación relativa a las políticas de certificados.

1.6 Realsec (Instalación)

1.7 Realsec (Implantación)

1.8 Realsec (Capacitación)

Esquema de formación Cryptosec OpenKey.

Nº aisoc 7

# ANEXO D

## SERVICIO DE MANTENIMIENTO Y SOPORTE 24x7

## COBERTURA Y NIVELES Y COMPROMISOS (SLA,s)

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

P aises 7

# 1.- SERVICIO DE MANTENIMIENTO Y SOPORTE 24X7

El contrato de Mantenimiento 24x7 le da derecho al cliente a los siguientes servicios:

## 1.1- Actualización de versiones

Suministro de las nuevas versiones software de los productos, en el caso de las aplicaciones, y de las nuevas versiones del firmware del HSM incorporado en el appliance servidor.

## 1.2- Atención y Soporte Técnico

Incluye la atención y asistencia técnica para la correcta explotación del producto, así como el soporte técnico para la resolución de incidencias y problemas técnicos derivados del producto.

La asistencia y soporte técnico se prestará: telefónicamente, a través de correo electrónico o de forma presencial, en casos de extrema gravedad de la incidencia, con una cobertura horaria de lunes a viernes, en horario de oficina.

## 1.3- Servicios de RMA o sustitución de equipamiento hardware.

Mientras el cliente se mantenga con un contrato de mantenimiento vigente y al día en pagos, se incluye la sustitución del HSM dentro de dicha garantía de mantenimiento, en caso de que sea necesario, según los criterios establecidos por Realsec, después de haber hecho las pruebas oportunas.

En relación al hardware de los appliances, estos están garantizados durante 3 años a partir de la compra de los equipos.

## 1.4- Niveles y Compromisos del Servicio de Mantenimiento

La prestación del Servicio de Mantenimiento y Soporte de REALSEC se estructura en los siguientes tres niveles de atención y compromisos de nivel de servicio. Los niveles de Soporte 1 y 2 deberán ser asumidos directamente por el Partner.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

e éimee 7

### Nivel de Soporte 1:

Incluye atención y asistencia técnica telefónica o por email  para:

- Proporcionar información  post-venta de los productos.

- Soporte para la configuración de software y hardware; preguntas sobre actualización de versiones; recopilación de información técnica para la identificación de problemas.

- Determinar la base de un problema.

- Proporcionar soporte básico sobre los productos estándar, protocolos y características.

- Documentación sobre manuales, guías, asesoramiento técnico y orientación sobre configuración, procedimientos y funciones de los productos.

- Dependiendo del caso y su complejidad, acceso remoto a los equipos del CLIENTE (previa autorización) para la subsanación de problemas.

### Nivel de Soporte 2:

Incluye la atención y asistencia  técnica telefónica o por email  para:

- Proporcionar soporte para resolver errores de configuración, solución de problemas, simular configuraciones complejas, resolver problemas de hardware  y software, pruebas de compatibilidad antes de hacer  el despliegue dentro de la red de producción; protocolos y características, diagnostico de problemas de forma remota; reproducción de problemas; configuración del producto (HSM) con un esquema de pruebas definido por el cliente.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

ª alísec 7

- Soporte para la adaptación de un HSM a la red del cliente.

- Actualización de un producto ( firmware y software)

- Aplicación de parches.

- Soporte para el manejo y trabajo de Claves con el HSM.

- Orientación y soporte sobre configuraciones, procesos y funciones de las herramientas con las que trabajan los productos.

- Asistencia técnica "in situ", siempre y cuando se considere que con ésta se va a poder solucionar el problema.

En el caso de que el técnico local del PARTNER local no supiera como o no pudiera resolver la incidencia, éste elevará la incidencia al Nivel 3 de Soporte, a través de la Web de Soporte Técnico Central de REALSEC en ESPAÑA ( http soffu@ealsec.com ), o bien contactando al teléfono de Soporte Central de REALSEC España, para ser atendido, en la franja horaria de cobertura del tipo de Mantenimiento contratado( 8x5).

<u>Nivel 3 de Soporte:</u>

Incluye la atención y asistencia técnica telefónica o por email para:

- Que el servicio de Soporte Central de REALSEC se ocupe de resolver la incidencia, bien facilitando las correspondientes instrucciones al cliente, o, en su caso, al ingeniero local del PARTNER, en cuanto a las acciones técnicas a realizar para su resolución.

- En el caso de que el servicio de soporte Central de REALSEC ESPAÑA no consiga resolver la incidencia, la reportará al área de Desarrollo e I+D de REALSEC para que esta se ocupe de su resolución.

- Una vez identificado el origen de la incidencia y su solución, el equipo de soporte de REALSEC ESPAÑA trasladará la solución al ingeniero del PARTNER o bien directamente al cliente para su aplicación.

- Una vez aplicada la solución en el entorno del cliente y que éste confirme por email la resolución de la incidencia, ésta se dará por resuelta y cerrada.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Esquema de formación Cryptosec OpenKey.

anexo 7

## 1.5- Horarios de atención y medios de contacto para recibir mantenimiento

Para recibir el servicio de Mantenimiento y Soporte 24x7, el cliente, deberá de contactar con los siguientes teléfonos y direcciones:

### PARTNER

- Teléfono de Soporte, en horario de oficina :

- Correo electrónico :

- Página web de atención de soporte:

### REALSEC ESPAÑA

- Teléfono de Soporte, en horario de oficina : +34 91 449 03 30

- Correo electrónico : techsupport@realsec.com

- Página web de atención de soporte : https://ftp.realsec.com

Para recibir atención técnica el cliente deberá de facilitar a REALSEC los siguientes datos:

- Nombre del producto

- Número de serie del appliance servidor.

- Número de serie del HSM .

- Versión del firmware y software.

## 2 .- Niveles de servicio y tiempos de respuesta en atención 24x7

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

P qisec 7

| NIVEL DE GRAV... | DESCRIPCIÓN | TIEMPO MEDIO | TIEMPO MEDIO |
|---|---|---|---|
| 1 | Un error aislado de software o hardware que deja al producto inoperable o causa una falla catastrófica en el producto, un impacto mayor y grave en el sistema, por ejemplo, caída del sistema. Un defecto reportado en el producto que ha sido licenciado, que no puede ser resuelto razonablemente, en la cual hay una condición de emergencia que restringe significativamente el uso del producto, para realizar funciones necesarias para el negocio. La incapacidad de usar el producto o un | 6 (seis) horas | REALSEC se compromete a contestar la incidencia del cliente en un plazo no superior a |
| 2 | Un error aislado de software o hardware que substancialmente degrada el rendimiento de producto o que restrinja materialmente al negocio, por ejemplo un impacto moderado en el sistema o sistema suspendido. Esta clasificación es un defecto reportado bajo el producto licenciado, el cual restringe el uso de una o más características del producto licenciado para realizar funciones necesarias para el negocio, pero no restringe completamente el uso del producto licenciado. Capacidad para usar el producto licenciado, pero una función no está disponible y las operaciones | 6 (seis) horas | REALSEC se compromete a contestar la incidencia del cliente en un |
| 3 | Un error aislado de software o hardware que causa solo un impacto menor en el uso del producto y/o un impacto menor en el sistema; los resultados: impacto operativo. La gravedad del defecto en el nivel 3 es un defecto reportado en el producto licenciado que restringe una o más características del producto para realizar funciones básicas necesarias para el negocio. El defecto puede ser fácilmente resuelto. El defecto puede causar algunas restricciones funcionales, pero esto no tiene un impacto crítico o severo en las | 6 (seis) horas | REALSEC se compromete a contestar la incidencia del cliente en un plazo no... |

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial



Esquema de formación Cryptosec OpenKey.

*realsec* 7

### 3. Matriz De Escalamiento

1. CLIENTE
2. PARTNER
3. REALSEC

### 4. Contactos de Matriz de Escalamiento:

| ARE CENTRO DE SOPORT | TELÉFONO | CORREO |
|---|---|---|
| Soporte Técnico REALSEC España | +34 670 612 844 | techsupport@realsec.com https://hq.realsec.com |

REALSEC prestará, con carácter general, la asistencia técnica al CLIENTE, de forma remota, de acuerdo con lo descrito en los puntos anteriores, hasta conseguir la correcta explotación del producto, así como el soporte técnico preciso para la resolución de las incidencias relacionadas con el mismo.

Cuando para la resolución de una incidencia relacionada directamente con el producto, se requiera la intervención física y presencial, REALSEC desplazará a las instalaciones del CLIENTE un ingeniero técnico experto en el producto, solamente cuando esta tarea sea imposible de ser asumida por el partner, según sea determinado de forma consensuada entre Realsec y el Partner.

Dicha presencia, en función de la tipología del incidente y la localización del CLIENTE, se producirá a la mayor brevedad posible, teniendo en cuenta que los técnicos deberán ser desplazados desde España, México o USA,     a partir del análisis y comprobación de la incidencia y  de la necesidad inminente de la prestación del servicio de manera presencial.

El partner contará con al menos un equipo en depósito proporcionado por Realsec, sin coste alguno, para poder sustituir equipos defectuosos lo antes posible. En caso de defecto, el partner entregará el equipo nuevo al cliente y devolverá el defectuoso a Realsec, para su análisis.

Realia Technologies · C/ Orense, 68 Planta 11 Izda, · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Esquema de formación Cryptosec OpenKey.

Realsec envía un nuevo equipo para sustituir cualquier equipo en depósito que deba ser utilizado en el cliente final.

El plazo normal de RMA será de 8 horas a contar desde el momento en que se estime por parte de Realsec que el equipo esta defectuoso y deberá ser remplazado.

## SERVICIO DE MANTENIMIENTO Y SOPORTE 8x5 COBERTURA Y NIVELES Y COMPROMISOS (SLA,s)

### 1.- SERVICIO DE MANTENIMIENTO Y SOPORTE 8 x5

El contrato de Mantenimiento 8x5 le da derecho al cliente a los siguientes servicios:

#### 1.1- Actualización de versiones

Suministro de las nuevas versiones software de los productos, en el caso de las aplicaciones, y de las nuevas versiones del firmware del HSM incorporado en el appliance servidor.

#### 1.2- Atención y Soporte Técnico

Incluye la atención y asistencia técnica para la correcta explotación del producto, así como el soporte técnico para la resolución de incidencias y problemas técnicos derivados del producto.

La asistencia y soporte técnico se prestará: telefónicamente, a través de correo electrónico o de forma presencial, en casos de extrema gravedad de la incidencia, con una cobertura horaria de lunes a viernes, en horario de oficina.

#### 1.3- Niveles y Compromisos del Servicio de Mantenimiento

La prestación del Servicio de Mantenimiento y Soporte de REALSEC se estructura en los siguientes tres niveles de atención y compromisos de nivel de servicio. Los niveles de Soporte 1 y 2 deberán ser asumidos directamente por el Partner.

#### 1.4- Servicios de RMA o sustitución de equipamiento hardware.

Mientras el cliente se mantenga con un contrato de mantenimiento vigente y al día en pagos, se incluye la sustitución del HSM dentro de dicha garantía de mantenimiento, en caso de que sea necesario, según los criterios establecidos por Realsec, después de haber hecho las pruebas oportunas.

En relación al hardware de los appliances, estos están garantizados durante 3 años a partir de la compra de los equipos.

#### Nivel de Soporte

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

r clase 7

Incluye atención y asistencia técnica telefónica o por email para:

- • - Proporcionar información post-venta de los productos.
- • - Soporte para la configuración de software y hardware; preguntas sobre actualización de versiones; recopilación de información técnica para la identificación de problemas.
- • - Determinar la base de un problema.
- • - Proporcionar soporte básico sobre los productos estándar, protocolos y características.
- • - Documentación sobre manuales, guías, asesoramiento técnico y orientación sobre configuración, procedimientos y funciones de los productos.
- • - Dependiendo del caso y su complejidad, acceso remoto a los equipos del CLIENTE (previa autorización) para la subsanación de problemas.

### Nivel de Soporte 2:

Incluye la atención y asistencia técnica telefónica o por email para:

- • - Proporcionar soporte para resolver errores de configuración, solución de problemas; simular configuraciones complejas, resolver problemas de hardware y software, pruebas de compatibilidad antes de hacer el despliegue dentro de la red de producción; protocolos y características, diagnostico de problemas de forma remota; reproducción de problemas; configuración del producto (HSM) con un esquema de pruebas definido por el cliente.
- • - Soporte para la adaptación de un HSM a la red del cliente.
- • - Actualización de un producto ( firmware y software)
- • - Aplicación de parches.
- • - Soporte para el manejo y trabajo de Claves con el HSM.
- • - Orientación y soporte sobre configuraciones, procesos y funciones de las herramientas con las que trabajan los productos.
- • - Asistencia técnica "in situ", siempre y cuando se considere que con ésta se va a poder solucionar el problema.

En el caso de que el técnico local del PARTNER local no supiera como o no pudiera resolver la incidencia, éste elevará la incidencia al Nivel 3 de Soporte, a través de la Web de Soporte Técnico Central de REALSEC en ESPAÑA ( https://hq.realsec.com ), o bien contactando al teléfono de Soporte Central de REALSEC España, para ser atendido, en la franja horaria de cobertura del tipo de Mantenimiento contratado( 8x5).

### Nivel 3 de Soporte:

Incluye la atención y asistencia técnica telefónica o por email para:

Realia Technologies - C/ Orense, 68 Planta 11 Izda. - 28002 - Madrid - ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.



Esquema de formación Cryptosec OpenKey.

ᴦ class 7

- •- Que el servicio de Soporte Central de REALSEC se ocupe de resolver la incidencia, bien facilitando las correspondientes instrucciones al cliente, o, en su caso, al ingeniero local del PARTNER, en cuanto a las acciones técnicas a realizar para su resolución.

- •- En el caso de que el servicio de soporte Central de REALSEC ESPAÑA no consiga resolver la incidencia, la reportará al área de Desarrollo e I+D de REALSEC para que esta se ocupe de su resolución.

- •- Una vez identificado el origen de la incidencia y su solución, el equipo de soporte de REALSEC ESPAÑA trasladará la solución al ingeniero del PARTNER o bien directamente al cliente para su aplicación.

- - Una vez aplicada la solución en el entorno del cliente y que éste confirme por email la resolución de la incidencia, ésta se dará por resuelta y cerrada.

### 1.5- Horarios de atención y medios de contacto para recibir mantenimiento

Para recibir el servicio de Mantenimiento y Soporte 8x5, el cliente, deberá de contactar con los siguientes teléfonos y direcciones:

### PARTNER

- • • - Teléfono de Soporte, en horario de oficina :
- • • - Core electrónico :
- • • - Pagina web de atención de soporte:

### REALSEC ESPAÑA

- • • - Teléfono de Soporte, en horario de oficina : +34 91 449 03 30
- • • - Correo electrónico : techsupport@realsec.com
- • • - Pagina web de atención de soporte : https://hq.realsec.com

Para recibir atención técnica el cliente deberá de facilitar a REALSEC los siguientes datos:

- • • - Nombre del producto
- • • - Número de serie del appliance servidor.
- • • - Número de serie del HSM .
- • • - Versión del firmware y software.

### 2 .- Niveles de servicio y tiempos de respuesta en atención 8x5

Realía Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.



Esquema de formación Cryptosec OpenKey.

ʋ αⅡⅡΞ∷∷ 7

| NIVEL DE GRAVEDAD DEL ERROR | DESCRIPCIÓN | TIEMPO MEDIO DE ATENCIÓN | TIEMPO MEDIO DE SOLUCIÓN |
|---|---|---|---|
| 1 | Un error aislado de software o hardware que deja al producto inoperable o causa una falla catastrófica en el producto, un impacto mayor y grave en el sistema, por ejemplo, caída de sistema. Un defecto reportado en el producto que ha sido licenciado, que no puede ser resuelto razonablemente, en la cual hay un condición de emergencia que restringe significativamente el uso del producto, para realizar funciones necesarias para el negocio. La incapacidad de usar el producto o un impacto crítico en l operación, requiere de solución inmediata. | 48 (cuarenta y ocho) horas | REALSEC se compromete a dar un tiempo de solución no Superior a las 48 (cuarenta y ocho) horas, siempre que existe derecho a reposición del equipo. |
| 2 | Un error aislado de software o hardware que substancialment degrada el rendimiento de producto o que restrinja materialment al negocio, por ejemplo un impacto moderado en el sistema o sistema suspendido. Esta clasificación es un defecto reportado bajo el producto licenciado, el cual restringe el uso de una o má características del producto licenciado para realizar funcione necesarias para el negocio, pero no restringe completamente el use del producto licenciado. Capacidad para usar el producto licenciado pero una función no está disponible y las operaciones son severamente afectadas. | 48 (cuarenta y ocho) horas | REALSEC se compromete a dar un tiempo de solución no Superior a las 48 (cuarenta y ocho) horas. |
| 3 | Un error aislado de software o hardware que causa solo un impacto menor en el uso del producto y/o un impacto menor en e sistema; los resultados: impacto operativo. La gravedad del defecto en el nivel 3 es un defecto reportado en el producto licenciado que restringe una o más características del producto para realiza funciones básicas necesarias para el negocio. El defecto puede ser fácilmente resuelto. El defecto puede causar algunas restricciones funcionales, pero esto no tiene u impacto crítico o severo en las operaciones. | 48 (cuarenta y ocho) horas | REALSEC se Compromete a dar un tiempo de solución no superior a las 48 (cuarenta y ocho) horas. |

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

realsec 7

• • 3.   Matriz De Escalamiento

1. **CLIENTE**
2. **PARTNER**
3. **REALSEC**

• • 4.   Contactos de Matriz de Escalamiento:

| AREA | TELÉFONO | CORREO ELECTRÓNICO |
|------|----------|--------------------|
| CENTRO DE SOPORTE PARTNER Soporte Técnio REALSEC Espuma | +34 91 449 03 30 | techsupport@realsec.com https://bu.realsec.com |

REALSEC prestará, con carácter general, la asistencia técnica al CLIENTE, de forma remota, de acuerdo con lo descrito en los puntos anteriores, hasta conseguir la correcta explotación del producto, así como el soporte técnico preciso para la resolución de las incidencias relacionadas con el mismo.

Cuando para la resolución de una incidencia relacionada directamente con el producto, se requieran la intervención física y presencial, REALSEC desplazará a las instalaciones del CLIENTE un ingeniero técnico experto en el producto, solamente cuando esta tarea sea imposible de ser asumida por el parte, según sea determinado de forma consensuada entre Realsec y el Partner.

Dicha presencia, en función de la tipología del incidente y la localización del CLIENTE, se producirá a la mayor brevedad posible, teniendo en cuenta que los técnicos deberán ser desplazados desde España, México o USA, a partir del análisis y comprobación de la incidencia y de la necesidad inminente de la prestación del servicio de manera presencial.

El parte contara con al menos un equipo en depósito proporcionado por Realsec, sin coste alguno, para poder sustituir equipos defectuosos lo antes posible. En caso de defecto, el parte entregaran el equipo nuevo al cliente y devolverá el defectuoso a Realsec, para su análisis. Realsec enviara un nuevo equipo para sustituir cualquier equipo en depósito que deba ser utilizado en el cliente final.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros

Esquema de formación Cryptosec OpenKey.

# ANEXO E

Plan de actualizaciones de Realsec

El Plan de actualizaciones garantiza que los clientes de Realsec siempre utilizan la última tecnología de Realsec sin tener que estimar su presupuesto para software o recursos administrativos. Este programa exclusivo para el software y hardware con licencia obtenido a través de un contrato de compra, dota a su organización de acceso inmediato a todas las actualizaciones de productos mientras dure el período de cobertura. La gestión de las actualizaciones de software nunca ha sido más fácil.

El plan de actualizaciones de Realsec le garantiza el menor coste administrativos. Los clientes pueden realizar un seguimiento de las últimas versiones de software de las distintas soluciones sin que ello suponga un gran consumo de recursos y de tiempo. El Plan de actualizaciones de Realsec optimiza los gastos administrativos asociados al mantenimiento del software al día y a la actualización de múltiples usuarios en varios departamentos y ubicaciones.

Cuando se lanza una nueva versión de un producto o un parche para el que su organización tiene cobertura del Plan de actualizaciones, Realsec le envía automáticamente un aviso de actualización y le simplifica las descargas de actualizaciones desde una única ubicación central. Gracias a las alertas de actualización proactivas y a las descargas electrónicas centralizadas, puede acceder a actualizaciones de software de Realsec e implantarlas en toda su organización de manera rápida y eficaz. Toda la información necesaria relativa a cada nueva actualización estará de igual forma disponible para su descarga y/o consulta en línea.

Además de las actualizaciones debidas a la evolución de nuestros productos, Realsec ejerce un rol proactivo en la protección de sus productos, dedicando gran parte de sus recursos a la búsqueda de vulnerabilidades de los distintos componentes que conforman nuestra suite de soluciones, incluyendo vulnerabilidades del Sistema Operativo, Base de Datos, etc..., de forma que periódicamente puede recibir actualizaciones de seguridad que le ayudarán a mantener sus productos actualizados y protegidos.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

Esquema de formación Cryptosec OpenKey.

6ª clase 7

# ANEXO F

Tabla de Contenidos

Formación HSM Cryptosec                          2

Formación Cryptosec OpenKey CA                   3

Formación Cryptosec OpenKey RA                   5

Formación Cryptosec OpenKey VA                   6

Formación Cryptosec OpenKey TSA                  7

Formación CryptoSign Server                      9

Formación Cryptosec Mail                        10

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

Nº clase: 7

## Formación HSM Cryptosec

*Instalación del hardware*

*Instalación del software y driver*

*Esquema de funcionamiento*

*Gestión de tarjetas*

*Proceso de inicialización*

*Gestión de usuarios*

*Gestión de claves*

*Backup y Restauración de claves.*

## Formación Cryptosec OpenKey CA

*Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Generación de usuarios. Roles.*

*Definición de la idea de cadena de certificación.*

*Importancia y responsabilidad de la cadena de certificación.*

*Esquema de herencia de los atributos de los certificados partiendo de un modelo de certificado autofirmado que pretenda generar una cadena de certificación*

*Generación de certificado de CA Root o de CA Subordinada*

a) Petición (Subordinada).
b) Importación del certificado (Subordinada).
c) Definir los atributos que estarán inmersos en el certificado electrónico (Root).
d) Generación de certificado autofirmado.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

**Documento confidencial**



La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Esquema de formación Cryptosec OpenKey.

ᴘ ᴅᴍᴏᴏᴄ ⁷

*Modelo de comunicación y su no repudio usando certificados de CA Subordinada*

a) Generación de certificado de comunicaciones para Autoridades de Certificación Subordinadas.
b) Aceptación de conexión de Autoridades de Certificación Subordinadas.
c) Validación de la identidad de una CA Subordinada.

*Gestión de CRL*

a) Configuración de puntos de distribución
b) Configuración de frecuencia de generación

*Configuración de políticas de certificación*

a) Definición de políticas y su relación con el uso de los certificados.
b) Asignación de atributos y usos de la clave.
c) Definición de asignación de CRL
d) Definición de la asignación de las DPC.
e) Definición de la asignación OCSP.
f) Definición de los subject alternatives name.
g) Definición de Name constraints.
h) Definición que Issuer Alternative Name.
i) Definición del Subject Key Identifier.
j) Ensamblado y unión de atributos de certificados y su visualización en los distintos sistemas operativos.
k) Definición de la cadena de certificación y sus consecuencias en la definición de atributos dentro de los certificados.
l) Definición de las políticas presenciales y no presenciales en el factor de generación de certificados electrónicos.

*Backup y restauración*

a) Políticas de Backup y los roles asociados a la operativa del producto.
b) Definir las formas de exportar y trasladar los backups .

*Auditoría de Logs*

a) Características de los logs y los elementos de seguimiento por acción.
b) Responsabilidades del perfil de auditoría que tiene acceso a los logs.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

Documento confidencial

Esquema de formación Cryptosec OpenKey.

*Exportación de ficheros de auditoría*

## Formación Cryptosec OpenKey RA

*Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Generación de usuarios, Roles.*

*Generación de certificados de comunicaciones con CA.*

a) Generación de Request de certificación.
b) Envío de Request a la CA.
c) Aceptación de certificado emitido y verificación de la cadena de certificación.

*Gestión de certificados*

a) Gestión de peticiones de certificado.
b) Gestión de peticiones de revocación.
c) Auditoría de certificados emitidos.

*Backup y restauración.*

a) Políticas de Backup y los roles asociados a la operativa del producto.
b) Definir las formas de exportar y trasladar los backups.

*Auditoría de Logs.*

a) Características de los logs y los elementos de seguimiento por acción.
b) Responsabilidades del perfil de auditoría que tiene acceso a los logs.
c) Exportación de ficheros de auditoría

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

**Documento confidencial**

La propiedad intelectual de este documento pertenece a REALSEC. Queda prohibida su reproducción, venta, o cesión a terceros.

CryptosecOpenKey VA

*Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Generación de usuarios. Roles.*

a) Creación de usuarios respecto a roles, y su relación con la inicialización de los equipos.
b) Definir los distintos roles que están desplegados en la operación de la plataforma.

*Generación de certificados de comunicaciones con VA.*

*Generación de Request de certificación.*

a) Proceso de creación de una estructura RSA PKCS#10.
b) Atributos que estarán inmersos en la RSA PKCS#10..
c) Tipos de formatos en los cuales pueden ser generadas las solicitudes de certificación.

*Importación de certificado de VA y cadena de certificación de emisión.*

a) Verificación de la cadena de confianza.
b) Importación certificación para VA.

*Configuración de la Autoridad de Validación.*

a) Fuentes de estado de los certificados revocados.
b) Parámetros del sistema

*Auditoria del sistema.*

a) Definir la forma de exportar los logs, para poder disponer de vestigios de generación de la operación de la pki.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

CryptosecOpenKey TSA

*Instalación y configuración*

a) Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
b) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
c) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Generación de usuarios. Roles.*

c) Creación de usuarios respecto a roles, y su relación con la inicialización de los equipos.
d) Definir los distintos roles que están desplegados en la operación de la plataforma.

*Generación de certificados válidos para TSA.*

a) Proceso de creación de una estructura RSA PKCS#10.
b) Atributos que estarán inmersos en la RSA PKCS#10..
c) Diferentes tipos de formatos en los cuales pueden ser generadas las solicitudes de certificación.
d) Verificación de los usos de certificado electrónico necesario para sellado de tiempo.
e) Incorporación de las autoridades de certificación correspondiente a la cadena de certificación.

*Importación de certificado de sellado de tiempo y cadena de certificación.*

c) Verificación de la cadena de confianza.
d) Importación certificación para VA.

*Generación de política de sellado de tiempo.*

a) Definición de parámetros extra en el token de tiempo.
b) Gestión de políticas de sellado de tiempo.

*Sistema de generación de sellos de tiempo.*

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

a) Análisis de los elementos de conectividad asociados al despliegue de un servicio de tiempo.
b) Consideraciones de los servicios de sincronía horaria, caso de estudio: NTP, o sincronía autónoma de fecha/hora por dispositivo especializados de precisión.
c) Análisis del tipo de trafico TSA que se despliega en el proceso de conectividad entre el cliente y el servicio de tiempo.
d) Verificación de una operación de sellado de tiempo .
e) Discretizar las distintas respuestas que debe definir el protocolo.
f) Analizar una respuesta satisfactoria y verificar los atributos definidos en la estructura perteneciente al estándar de sellado de tiempo correspondiente al RFC 3161.

*Gestión de almacenamiento de los token generados.*

a) Método de política de respaldo sustentado en lotes.
b) Política de mantenimiento y borrado de logs de operación en el servicio de sellado de tiempo.

*Auditoria del sistema.*

a) Gestión de logs y eventos del sistema.

## CryptosecSignServer

*Instalación y configuración*

d) Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
e) Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos
f) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Gestión de usuarios del sistema de administración.*

e) Roles soportados.
f) Creación de usuarios indispensables para la operación del equipo

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

*Configuración del sistema*

f)  Establecimiento de parámetros de funcionamiento.
g)  Integración con sistemas externos.

*Usuario finales.*

e)  Gestión de usuarios.
f)  Gestión de grupos de usuarios (LDAP , Active Directory).
g)  Asignación/revocación de certificados a usuarios

*Gestión de certificados.*

c)  Cadenas de confianza.
d)  Peticiones e importación de certificados.
e)  Renovación

*Auditoría del sistema.*

b)  Gestión de logs y eventos del sistema.

*APIS de acceso al sistema de firma*

c)  Instalación de librería CSP Windows
d)  Instalación de librerías JAVA
e)  Desarrollo soportado en CSP
f)  Desarrollo soportado en librerías de firma JAVA

**CryptosecSecMail**

*Instalación y configuración*

g)  Desempaquetado y elementos asociados a los equipamientos (cables de conexión, actualización de los appliances y definición de periféricos)
h)  Procesos de inicialización del dispositivo y de los appliances adjuntos a los dispositivos

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial

i) Modo de acceso por defecto de los equipamientos, interface de administración e inicialización de los productos.

*Gestión de usuarios del sistema de administración.*

g) Roles soportados.
h) Creación de usuarios indispensables para la operación del equipo

*Configuración del sistema*

h) Establecimiento de parámetros de funcionamiento.
i) Modos de funcionamiento.
j) Integración con sistemas externos.
k) Integración con Servicio SMTP corporativo.

*Usuario finales.*

h) Gestión de usuarios y cuentas de correo
i) Importación de certificados.

*Gestión de certificados.*

f) Cadenas de confianza.
g) Peticiones e importación de certificados.
h) Renovación

*Auditoria del sistema.*

g) Gestión de logs y eventos del sistema.

Realia Technologies · C/ Orense, 68 Planta 11 Izda. · 28002 · Madrid · ESPAÑA

Documento confidencial



**INTERNATIONAL COURT OF ARBITRATION®** | **INTERNATIONAL CENTRE FOR ADR** | LEADING DISPUTE RESOLUTION WORLDWIDE

9 de febrero de 2015 / ACS-NN

**20827/ASM**

ANDEANTRADE, INC. (Estados Unidos de América) **c/ 1.** REALSEC, INC. (Estados Unidos de América) **2.** Sebastian Muñoz (España)

---

Nory M. Acosta-Lopez, Esq.
Brian Barakat, Esq.
BARAKAT LAW, P.A.
2701 Ponce de Leon Boulevard, Suite 202
Coral Gables, Florida 33134
Estados Unidos de América

*Por correo electrónico: nory@triallawmiami.com;*
*brian@triallawmiami.com;*
*service@triallawmiami.com*

Estimados Señores:

La Secretaría de la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional (la "Secretaría") acusa recibo de su Solicitud de Arbitraje (la "Solicitud") de fecha 3 de febrero de 2015. La referida Solicitud fue recibida el pasado 5 de febrero de 2015. De conformidad con lo previsto en el artículo 4(2) del Reglamento de Arbitraje de la CCI vigente a partir del 1 de enero de 2012 (el "Reglamento"), el arbitraje de la referencia inició en dicha fecha.

La referencia de este arbitraje se indica más arriba. Les rogamos verificar que la referencia sea correcta e incluir el número de caso **20827/ASM** en toda correspondencia futura.

En toda correspondencia futura, los términos en mayúscula que no hayan sido definidos en la presente comunicación tendrán el significado que se les atribuye en el Reglamento, y las referencias a artículos del Reglamento se harán constar generalmente como "(artículo ***)".

**Tasa de registro**

Acusamos recibo de la tasa de registro no reembolsable de US$ 3 000.

**Copias de la Solicitud**

Hemos recibido cuatro copias de la Solicitud y de los documentos adjuntos a la misma.

.../...

**INTERNATIONAL CHAMBER OF COMMERCE (ICC)**
**INTERNATIONAL COURT OF ARBITRATION**

33-43 avenue du Président Wilson, 75116 Paris, France
T +33 (0)1 49 53 29 05  F +33 (0)1 49 53 29 33
E arb@iccwbo.org  www.iccarbitration.org

**Equipo a cargo del arbitraje**

Sra Ana Serra e Moura, Consejera ..........................(línea de teléfono directa +33 1 49 53 30 28)
Sr Juan Pablo Argentato, Consejero Adjunto........ (línea de teléfono directa + 33 1 49 53 28 45)
Sra Juliana Castillo Rincón, Consejera Adjunta.....(línea de teléfono directa + 33 1 49 53 28 51)
Sr Gustavo Scheffer da Silveira, Consejero Adjunto ...(línea de teléf. directa +33 1 49 53 30 03)
Srta Patricia Despagne, Asistente ...........................(línea de teléfono directa +33 1 49 53 30 12)
Sra Sara Miranda, Asistente ...................................(línea de teléfono directa +33 1 49 53 29 15)
Srta Veronica Sanchez, Asistente ...........................(línea de teléfono directa +33 1 49 53 28 25)
Número de Fax ........................................................................................... (+33 1 49 53 57 79)
Dirección de correo electrónico.................................................................. (ica1@iccwbo.org)

El equipo a cargo del arbitraje les escribirá en relación con la notificación de la Solicitud y otra información relevante.

Adjuntamos una nota donde se destacan ciertos aspectos relevantes sobre el arbitraje de la CCI y una nota relativa a cuestiones administrativas.

Atentamente,

Andrea Carlevaris
Secretario General
Corte Internacional de Arbitraje de la CCI

Anexos    - Reglamento de Arbitraje de la CCI *(ver también www.iccarbitration.org)*
          - Nota a las Partes en procedimientos en virtud del Reglamento de Arbitraje de 2012
            de la CCI
          - Nota relativa a cuestiones administrativas



**ADR/200**
ANDEANTRADE, INC. (USA) **and** REALSEC, INC. (USA)

BARAKAT LAW, P.A.
Ms. Nory M. Acosta-Lopez
2701 Ponce de Leon Boulevard, Suite 202
Coral Gables
Florida 33134
USA

*By e-mail: nory@triallawmiami.com*
*and service@triallawmiami.com*

WOLFE LAW
Mr. Richard Wolfe
175 SW 7 Street
Latitute One Offices
Suite 2410
Miami
Florida 33130
USA

*By e-mail: rwolfe@wolfelawmiami.com*

Mr. Marcel Feraud

*By e-mail: marcelferaud@yahoo.com*

14 October 2014

Dear Madam, Dear Sirs,

The Centre acknowledges receipt of Mr. Richard Wolfe's email dated 13 October 2014, sent on behalf of REALSEC, a copy of which was directly sent to ANDEANTRADE.

The Centre notes REALSEC's comments.

**<u>Representation</u>**

We note that REALSEC is represented in this matter by Mr. Richard Wolfe of the law firm WOLFE LAW in Miami, USA.

Further, the Centre notes REALSEC's indication that it is also represented in this matter by Mr. Marcel Feraud. The Centre invites REALSEC to provide full contact details of Mr. Marcel Feraud to the Centre **on or before 16 October 2014**.

…/…

**INTERNATIONAL CHAMBER OF COMMERCE (ICC)**
**INTERNATIONAL CENTRE FOR ADR**

33-43 avenue du Président Wilson, 75116 Paris, France
**T** +33 (0)1 49 53 30 52  **F** +33 (0)1 49 53 30 49
**E** adr@iccwbo.org   www.iccadr.org

**ADR/200**                                                                                      **Page 2**

**Additional Parties**

The Centre notes REALSEC's indication that Mr. Oscar Trujillo and ANDEANTRADE SA should possibly be joined as parties to this mediation proceeding.

Please note that it is possible to join additional parties to the mediation proceeding at this or at a later stage should all the parties agree.

Accordingly, we invite ANDEANTRADE's comments on the joinder of Mr. Oscar Trujillo and ANDEANTRADE SA to this matter **on or before 21 October 2014**.

Further and should both parties *i.e* REALSEC and ANDEANTRADE agree to join the additional parties to the proceeding, we invite the parties to provide their contact details to the Centre **on or before 21 October 2014**.

Subsequently, and as the case may be, the Centre will notify the Request to the additional parties and invite them to indicate whether they wish to participate in the present proceeding.

**Mediator**

We note that REALSEC agrees with ANDEANTRADE's proposal to nominate Judge Israel Reyes as Mediator in this matter.

Accordingly, the Centre will invite Judge Israel Reyes to complete the necessary documents prior to proceeding with his confirmation in this matter, pursuant to Article 5(4) of the Mediation Rules.

**Time Limit for the Proceedings**

We note REALSEC's indication that it may not be possible to conduct the proceedings within 45 days.

We remind the parties that the Clause provides for a 45-day time limit for the proceeding from the filing of the Request unless agreed otherwise by the parties in writing.

Accordingly, please note that the time limit foreseen can be extended at any time upon agreement in writing by the parties.

The Centre will invite the parties to discuss the exact timing of this matter with the Mediator once appointed or confirmed.

**Next Steps**

We look forward to receiving ANDEANTRADE's comments within the time limit provided in the present letter.

…/…

**ADR/200** **Page 3**

In the meantime, should you have any further questions, please do not hesitate to contact us.

Sincerely yours,

Daphné d'Hennezel
Deputy Manager
ICC International Centre for ADR

# EXHIBIT "3"

BARAKAT
LAW

2701 Ponce de Leon Blvd. Suite 202, Coral Gables, FL 33134 • Tel: 305-444-3114 • Fax: 305-444-3115 • brian@triallawmiami.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 15-20958-CIV- MARTINEZ-GOODMAN

| | |
|---|---|
| REALSEC, INC., a California company, | CIVIL DIVISION |
| Plaintiff, | |
| vs. | |
| ANDEANTRADE, S.A., a Foreign company, ASETELSOS, Cia Ltd., a foreign company, OSCAR TRUJILLO, an individual, | |
| Defendant. | |

## DECLARATION OF OSCAR TRUJILLO

1.     My name is Oscar Trujillo. I am over the age of 21 and make this Declaration of my personal knowledge.

2.     I am the President of Andeantrade, S.A.

3.     Andeantrade, S.A. is not a party to the Contract entered into between Realsec, Inc. and Andeantrade, Inc.

4.     Andeantrade, S.A. does not conduct any business in Florida.

5.     Further, Andeantrade, S.A. does not maintain any employees, have any offices, bank accounts, telephone numbers or mailing addresses in Florida.

6.     Andeantrade, S.A. does not own any real estate or otherwise have any form of presence in Florida.

7.     Andeantrade, S.A. does not own any personal property in Florida.

Executed pursuant to 28 U.S.C. § 1746, Unsworn declaration under penalty of perjury: "I declare under penalty of perjury under the laws of the United States of America and the state of Florida that the foregoing is true and correct. Executed on (date). (Signature)"

Please print by hand:

Executed pursuant to 28 U.S.C. # 1746, Unsworn declaration under penalty of perjury : " I declare under penalty of perjury under the laws of the United States of America and the state of Florida that the foregoing is true and correct. Executed on (date). (Signature)"

_____
Oscar Trujillo
Quito, Ecuador

04/13/2015
Date