UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-20958-CIV-MARTINEZ/GOODMAN

REALSEC, INC.,

    Plaintiff,

vs.

ANDEANTRADE, S.A., et al.,

    Defendants.
_____/

**ORDER ON DEFENDANTS ANDEANTRADE, S.A.'S AND OSCAR TRUJILLO'S MOTION TO DISMISS OR ALTERNATIVELY TO STAY THE ACTION**

Plaintiff Realsec, Inc. ("Realsec") filed this Action "for violation of a confidentiality agreement, fraud, tortious interference and conspiracy *regarding Realsec's contract* to build a software and hardware platform for the justice department in Ecuador and the Defendant's [alleged] efforts to interfere with same so they could siphon off a portion of the costs of the project to themselves." [ECF No. 1, p. 1] (emphasis supplied). Realsec served two of the three named Defendants, Andeantrade, S.A. ("Andeantrade") and Oscar Trujillo ("Trujillo"). The third Defendant, Asetelsos, Cia Ltd. ("Asetelsos"), was not served and has yet to appear in this Action.[1] The parties consented [ECF No. 21, p. 6] to full magistrate judge jurisdiction for all discovery and pre-trial matters, not including summary judgment. District Court Judge Jose E.

---

[1]     The Undersigned will be entering a separate Order to address this issue.

Martinez then referred to the Undersigned all pretrial motions (other than summary judgment, the scheduling of pretrial deadlines and setting the trial date) for final orders. [ECF No. 23].

Defendants Andeantrade and Trujillo (collectively referred to as "Defendants") moved to dismiss, or, in the alternative, to stay this Action on four grounds: (1) the Action is controlled and precluded by an arbitration provision in the contract on which Realsec bases its claims; (2) there is a lack of personal jurisdiction over Defendants; (3) Realsec failed to state a claim on which relief can be granted; and (4) Realsec failed to join an indispensable party, Andeantrade, Inc. ("Andeantrade Florida"), a Florida corporation who is a signatory to the contract on which Realsec bases its claims. [ECF No. 11]. For the reasons outlined below, the Undersigned **grants in part** Defendants' motion.

I.  FACTUAL BACKGROUND[2]

This dispute arises "from a business deal gone bad," in which Realsec was hired to create an e-filing system for the federal judiciary in Ecuador (the "Judicial Council"). [ECF No. 1, p. 3]. The Judicial Council did not directly contract with Realsec, however. Instead, the Council contracted with Asetelsos to build the e-filing system. [*Id.*]. Realsec alleges that Asetelsos is "merely a nominee or beard of Andeantrade in Ecuador

---

[2]   The factual background is derived from Realsec's complaint [ECF No. 1], the allegations of which are, in accordance with Federal Rule of Civil Procedure 12, presumed as true for the purposes of this Order. *See* Fed. R. Civ. P. 12.

2

propped up to hide Andeantrade's real interest in the illegal awarding of this government contract and structured to illegally siphon off government funds." [*Id.*]. Realsec alleges that, at all times, both Asetelsos and Andeantrade Florida acted as shells for Andeantrade and its principal, Trujillo (who is also the principal of Andeantrade Florida). [*Id.*, at p. 4].

Andeantrade Florida entered into a contract with Realsec (with Realsec to provide 100% of the necessary work to create the e-filing system at a fraction of the price being paid to Asetelsos). This agreement between Andeantrade Florida and Realsec is hereinafter referred to as the "Contract". [*Id.*]. Realsec performed under the Contract until, it alleges, Andeantrade Florida prematurely terminated the Contract, claiming that Realsec breached the Contract. [*Id.*, at p. 4]. The dispute between Andeantrade Florida and Realsec is being resolved in a separate proceeding per the Contract's arbitration clause. [ECF Nos. 1, p. 7; 15, p. 8].

Upon the allegedly-premature termination of the Contract, Astelsos and Andeantrade entered into a contract with Realsec's competitor, Bit4id, to complete the e-filing project for the Judicial Council. [ECF No. 1, p. 11]. In order to complete the project with Bit4id, Defendants allegedly doctored a "final consultancy document" provided by Realsec to the technology board of the Judicial Council in an effort to destroy the deal with Realsec in favor of finishing the project with Bit4id. [*Id.*]. Realsec alleges that Bit4id's involvement in completing the project resulted in Realsec's

3

proprietary technology being disclosed to Bit4id, in violation of the Contract. [*Id.*, at p. 12].

Realsec thus claims that Andeantrade Florida, as a "mere[] . . . puppet of Andeantrade and Asetelsos[,]" acted in concert with Trujillo to conspire to commit fraud upon Realsec and to disclose Realsec's confidential and proprietary information to a competitor in violation of non-disclosure agreements in the Contract. [*Id.*]. The complaint consists of four Counts: (1) Breach of the non-disclosure agreement in the Contract by Andeantrade (even though Andeantrade is not a party to the Contract); (2) Breach of the non-disclosure agreement in the Contract by Asetelsos (even though Asetelsos is also not a party to the contract); (3) Tortious interference with the advantageous business relationship between Realsec and the Judicial Council by all Defendants (including Asetelsos); and (4) Fraud by Trujillo. [ECF No. 1].

## II.  LEGAL STANDARDS AND ANALYSIS

Defendants' motion is based on four separate grounds. However, it is only necessary for the Undersigned to address the first ground -- compelling arbitration -- because it is a threshold issue which, if resolved in Defendants' favor, moots all other defense arguments.

### Arbitration

Section 3 of the Federal Arbitration Act ("FAA"), requires that a court, upon motion by a party to an action in federal court, stay the action if it involves an "issue

referable to arbitration under an agreement in writing." 9 U.S.C. § 3. The FAA mandates that a contract clause requiring the parties to "submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable and enforceable[.]" 9 U.S.C. § 2.

"A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Preston v. Ferrer*, 552 U.S. 346, 357-58 (2008) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 633 (1985). *See also Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 278, (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984) ("There is strong presumption in favor of enforcing arbitration clauses in the context of international commercial disputes"); *Pysarenko v. Carnival Corp.*, No. 14-20010-CIV, 2014 WL 1745048, at *1 (S.D. Fla. Apr. 30, 2014) *aff'd*, 581 F. App'x 844 (11th Cir. 2014) (citing *Lindo v. NCL (Bahamas)*, 652 F.3d 1257, 1269, 1275 (11th Cir. 2011)).

"Therefore, 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations.'" *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). "Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute, which he has not agreed so to submit. As a general rule, therefore, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.* (internal citations and quotations omitted).

This Action involves two of three Defendants (non-signatories to the Contract) moving to compel Realsec (a signatory to the Contract) to arbitration.[3] The "lack of a written arbitration agreement is not an impediment to arbitration." *Sunkist Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993).

In *MS Dealer*, the Eleventh Circuit recognized that there are limited exceptions that permit non-signatories to a contract to compel arbitration against a signatory. 177 F.3d at 947. More specifically, there are three such exceptions: equitable estoppel, agency or related principles, and third-party beneficiary. *Id.* Defendants argue that equitable estoppel applies here to permit them to compel arbitration. The Undersigned agrees.

As District Judge Robert N. Scola, Jr. stated in *Gunson v. BMO Harris Bank, N.A.*:

> Equitable estoppel allows a non-signatory to enforce the provisions of a contract against a signatory in two circumstances. First, equitable estoppel applies when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-signatory. In other words, arbitration is appropriate when the signatory's claim against a non-signatory "makes reference to" or "presumes the existence of" the agreement. *MS Dealer Serv. Corp.*, 177 F.3d at 947; *Armas v. Prudential Sec., Inc.*, 842 So.2d 210, 212 (Fla. 3d DCA 2003). Second, equitable estoppel applies when the signatory raises allegations of concerted misconduct by both the non-signatory and one or more of the signatories to the contract. *See Bailey v. ERG Enter.*, 705 F.3d 1311, 1321 (2013) (citing *MS Dealer Serv. Corp.*, 177 F.3d at 947); *Marcus v. Fla. Bagels, LLC*, 112 So.3d 631, 633–34 (Fla. 4th DCA 2013). In other words, equitable estoppel precludes a party from "trying to have his cake and eat it too"—that is, using certain

---

[3] Technically, Defendants' motion is a "motion to dismiss," but it is, in effect, a partial motion to compel arbitration, which, if granted, will result in this Action being stayed or dismissed pending completion of the arbitration.

6

> provisions of the contract to their benefit to help establish their claim while also attempting to avoid the burdens of the other provisions. *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (citation omitted).

43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014). Defendants argue that both circumstances apply in this Action. The Undersigned agrees.

In responding to the motion to compel arbitration, Realsec argues that (1) Defendants are not parties to the Contract and therefore cannot enforce its arbitration terms, and (2) Realsec is not actually attempting to enforce the Contract. [ECF No. 15, p. 2]. This position is inaccurate, both factually and legally.

As the Eleventh Circuit ruled in *MS Dealer*, non-signatories can, in fact, enforce arbitration agreements against signatories in specific circumstances. The present lawsuit is precisely one of those circumstances.

Realsec unpersuasively asserts that its claims do not rely on the terms of the Contract. However, Count I of the complaint unambiguously charges Andeantrade with a *breach of the Contract*. [ECF No. 1, pp. 12-13] ("Andeantrade breached the terms/the non-disclosure agreement attached hereto as ex A").[4] Thus, it is apparent on the face of the complaint that Realsec is attempting to enforce at least this contractual provision through this Action. Count II of the complaint solely invokes Asetelsos, so the

---

[4] "Ex A" or Exhibit A [ECF No. 1-1] is an untranslated, Spanish-language portion of the Contract attached to the complaint, on which Realsec has underlined certain portions of the text.

7

Undersigned will not address that cause of action here, as Astelos is not a party to the Contract and has not been served.

Count III of the complaint alleges that Defendants interfered in an advantageous business relationship between Realsec and the Judicial Council. [*Id.*, at pp. 13-14]. As the complaint makes abundantly clear, however, the only "business relationship" between Realsec and the Judicial Council is merely Realsec's Contract with Andeantrade Florida, under which Realsec developed hardware and software for Andeantrade Florida, who, in turn, passed that finished product through Defendants to the Judicial Council. Thus, the Contract itself is, in essence, what Realsec claims was interfered with in this Count. Accordingly, the factual basis alleged for Realsec's allegation in Count III is, again, entirely and directly derived from the Contract.

Count IV is a claim of fraud against Trujillo. Although, through the admitted pleadings error of Realsec,[5] the requisite statements needed to allege with "particularity the circumstances constituting fraud or mistake"[6] are absent, Realsec does incorporate by reference the first fifty paragraphs of the complaint to establish the general factual basis of the claim. [*Id.*, at p. 14]. The general factual basis of the complaint in those fifty paragraphs is, to quote Realsec's complaint itself, an action "for violation of a

---

[5] Realsec admits in its response to the motion to dismiss and/or stay that its counsel erred in ending the complaint midsentence, after a semicolon, before listing the specific allegations of fraud with particularity per the heightened pleading standards required for a fraud allegation under Federal Rule 9(b). [ECF No. 15, pp. 7-8].

[6] Fed. R. Civ. P. 9(b).

confidentiality agreement, *fraud*, tortious interference and conspiracy *regarding Realsec's contract* to build a software and hardware platform for the justice department in Ecuador[.]" [*Id.*, at p. 1]. Thus, Count IV, being dependent on the factual allegations set out in paragraphs 1-50, also arises directly from the Contract.

Furthermore, concerning the fraud allegation, Realsec specifically alleges that "Andeantrade-Florida is merely the puppet of Andeantrade and Asetelsos and these parties, acting together with Trujillo, have conspired to commit fraud upon Realsec[.]" [ECF No. 1, p. 4]. Thus, the Defendants' alleged fraud was committed in concert with Andeantrade Florida. "[E]quitable estoppel applies when the signatory raises allegations of concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Gunson*, 43 F. Supp. 3d at 1401 (citing *Bailey*, 705 F.3d at 1321). The fraud allegation in the complaint makes exactly this assertion of concerted conduct with a signatory to the Contract, and as such, subjects Count IV to the arbitration clause on this ground as well.

"[A]rbitration is appropriate when the signatory's claim against a non-signatory 'makes reference to' or 'presumes the existence of' the agreement." *Gunson*, 43 F. Supp. 3d at 1401 (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947). As the Undersigned demonstrated above, all three claims against Defendants do more than just 'make reference to' or 'presume the existence of' the Contract with the arbitration clause. In the instant case, the *only* connection alleged between Defendants and Realsec is through

9

Defendants' alleged puppeteering of a contractual partner of Realsec (i.e., Andeantrade Florida). When all allegations and references concerning Andeantrade Florida and its Contract with Realsec (which Realsec *admits* is subject to an arbitration clause [ECF Nos. 1, p. 7; 15, p. 8]) are removed from the complaint, there is no connection remaining between Defendants and Realsec.[7]

The arbitration clause in the Contract, in a very broad and inclusive fashion, requires that disagreements stemming from or relating to the Contract must be arbitrated. Section 10.1 of the Contract (as translated into English by Defendants)[8] states:

> In case of disagreements derived from the instant contract or related to same, the parties undertake to submit said disagreements to the ADR disagreement resolution procedure of the International Chamber of Commerce. In the event that the disagreement is not resolved through ADR within 45 days of the filing of the demand for ADR, or at the expiration of some other time period agreed to in writing by the parties, said disagreement shall be definitively resolved in accordance with the Arbitration regulations of the International Chamber of Commerce by an arbitrator named in accordance with said regulations. The arbitration shall

---

[7]   While it is true that Trujillo is the principal of Andeantrade Florida [ECF No. 15-1], anything he did in that capacity would be subject to the arbitration agreement in the Contract. Thus, Realsec is burdened with providing allegations against Trujillo that (1) do not arise from the Contract and (2) were done in either his independent capacity or in his capacity as the alleged principal of Andeantrade. Realsec's lengthy recitation of the facts in this case, even if presumed true, do not establish either of those.

[8]   Defendants attached the original Contract to their motion in its untranslated form, and provided a translation of Section 10.1 in the motion. [ECF No. 11, pp. 3, 19-54]. Additionally, Realsec attached the original version of a portion of the Contract to its complaint [ECF No. 1-1], which also includes Section 10.1 in its original, untranslated form.

be conducted in Spanish, in the city of Miami, State of Florida, United States of America.

[ECF No. 11, p. 3].

It is abundantly clear that Realsec is attempting to avoid the mandatory arbitration process by filing this Action against Andeantrade and Trujillo. The Contract is unequivocal in its requirement of arbitration for disagreements arising from and related to the Contract. And while Defendants are not themselves signatories[9] to the Contract, equitable estoppel, as applied in this Circuit, provides non-signatories with the power to enforce an arbitration clause against a signatory. *See MS Dealer Serv. Corp.*, 177 F.3d at 947. Defendants have timely moved to enforce that arbitration provision and Realsec has provided no convincing grounds for the Court to deny their motion.

### III. CONCLUSION

Therefore, the Undersigned **grants** Defendants' motion to compel arbitration. And **denies as moot** the remaining requests for relief in Defendants' motion. Accordingly, the complaint is hereby **dismissed without prejudice** concerning Defendants Andeantrade and Trujillo. Because Defendant Asetelsos has not yet been served with the complaint (a matter to be addressed by the Undersigned in a separate

---

[9] Trujillo is technically a signatory of the Contract, however, he only signed it in his representational capacity as the principal of Andeantrade Florida. [ECF Nos. 1-1, p. 9; 11, p. 29].

Order), this Order does not impact the claims made against Asetelsos, and so the case shall (for now) remain open as to this one Defendant.

**Done and Ordered** in Chambers, in Miami, Florida, November 24, 2015.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
Honorable Jose E. Martinez
All Counsel of Record